PETER GALIPAULT & another[1] *vs*. WASH ROCK INVESTMENTS, LLC, & others.[2]

No. 04-P-1662.

Suffolk. May 4, 2005. - November 7, 2005.

Present: GELINAS, CYPHER, & TRAINOR, JJ.

*Lis Pendens. Contract*, Rescission. *Practice, Civil,* Attorney's fees. *Condominiums. Real Property,* Condominium.

This court concluded that the statutory language contained in G. L. c. 184, § 15(*d*), authorizing appeals under G. L. c. 231, § 118, created a new exception to the rule that appellate review may proceed only from a final judgment, and that consequently an interlocutory appeal from an order granting special motions to dismiss and awarding attorney's fees and costs was not premature. [79-81]

A Superior Court judge neither committed an error of law nor abused his discretion in applying the standards of G. L. c. 184, § 15(*c*), to dissolve a memorandum of lis pendens, where the plaintiffs violated the explicit statutory language of G. L. c. 184, § 15(*b*), and made a frivolous claim on that basis. [81-83]

A Superior Court judge properly dismissed an action brought by plaintiffs seeking declaratory relief regarding an owner's sale of six condominium units to another buyer, where the plaintiffs did not possess a right of first refusal under the condominium documents or otherwise [83-84]; likewise, there was no error in the dismissal of the complaint insofar as it sought rescission of the relevant purchase and sale agreement and injunctive relief, where the plaintiffs were never a party to the contract they sought to reverse, where they never sought any form of assignment of the right of first refusal, despite their actual knowledge of the transaction in question, and where the plaintiffs' conduct was patently unfair [84-85].

In a dispute regarding the sale of six condominium units, the judge's award of attorney's fees and costs following the allowance of special motions to dismiss was not clearly erroneous. [85-87]

CIVIL ACTION commenced in the Superior Court Department on July 8, 2004.

[1]Nancy Bellantone.

[2]James Lee; HJB, Inc., as trustee of 330 Realty Trust; and Eastern Bank.

The case was heard by *Joseph M. Walker III*, J., on motions to dissolve a memorandum of lis pendens and special motions to dismiss.

*Catherine J. Savoie* for the plaintiffs.

*Christian W. Habersaat* for HJB, Inc., & another.

*John R. Shek* for Wash Rock Investments, LLC, & another.

GELINAS, J. In this appeal we consider G. L. c. 184, § 15, as amended by St. 2002, c. 496, § 2, and more especially the provisions for the expedited dissolution of an unjustified memorandum of lis pendens, for a special motion to dismiss, and for appeal pursuant to G. L. c. 231, § 118. The plaintiffs contend that a Superior Court judge erred as a matter of law, or abused his discretion, in dissolving a lis pendens and in dismissing their claims seeking injunctive relief and rescission of a real estate transaction. They also claim that the judge erred in dismissing their claim of breach of fiduciary duty by ruling that, as a matter of law, the members of the governing board of their condominium association owed no fiduciary duty to them as individual condominium unit owners; in dismissing their breach of contract count; and in awarding the defendants attorneys' fees and costs. We affirm.

The plaintiffs, owners of a business condominium unit at 55 Temple Place in Boston, commenced this action in Superior Court in July, 2004. The original action was filed less than twenty-four hours prior to a real estate closing in which the defendant Wash Rock Investments, LLC (WRI), acting through its manager, the defendant James Lee, was to sell the remaining six units of the condominium to the defendant HJB, Inc. (HJB), as trustee of 330 Realty Trust. On the day following the filing of the complaint, after hearing, a judge denied the plaintiffs' request for injunctive relief. On the same day, and with full disclosure of the pending litigation, the real estate transaction went forward at the offices of counsel for defendant Eastern Bank, HJB's mortgage lender. Quitclaim deeds for the premises were recorded some three days later.

Approximately one month later, in mid-August, the plaintiffs filed a first amended verified complaint, together with a motion for judicial endorsement of a memorandum of lis pendens. After hearing, a different Superior Court judge allowed the plaintiffs' motion. The judge reserved, without prejudice, the defendants'

rights to file a motion to dissolve the lis pendens. The endorsed memorandum of lis pendens was recorded forthwith, and remains of record.

On September 21, 2004, HJB filed an answer and a counterclaim against the plaintiffs seeking damages arising from the filing of the lis pendens, alleging interference with contractual relationship, intentional interference with advantageous business relations and prospective economic advantage, and abuse of process. HJB further cross-claimed against WRI and James Lee for breach of contract and misrepresentation. WRI filed an answer and counterclaim on September 27, 2004, alleging the same counterclaims as HJB, but adding claims for breach of express and implied contract. WRI also filed a cross claim against HJB seeking indemnity and contribution.

In October, WRI filed a special motion to dismiss pursuant to G. L. c. 184, § 15(*c*),[3] seeking an order (a) dismissing the plaintiffs' complaint (all counts); (b) dissolving the memoran-

---

[3]In pertinent part, the statute provides: "A party may also file a special motion to dismiss the claimant's action if that party believes that the action or claim supporting the memorandum of lis pendens is frivolous. The special motion to dismiss, unless heard at the time the claimant first applied for a judicial endorsement under [G. L. c. 184, § 15(*b*)], shall be heard at the same time as the hearing on the motion to dissolve the memorandum of lis pendens. If the court determines that the action does not affect the title to the real property or the use and occupation thereof or the buildings thereon, it shall dissolve the memorandum of lis pendens. The special motion to dismiss shall be granted if the court finds that the action or claim is frivolous because (1) it is devoid of any reasonable factual support; or (2) it is devoid of any arguable basis in law; or (3) the action or claim is subject to dismissal based on a valid legal defense such as the statute of frauds. In ruling on the special motion to dismiss the court shall consider verified pleadings and affidavits, if any, meeting the requirements of the Massachusetts rules of civil procedure. If the court allows the special motion to dismiss, it shall award the moving party costs and reasonable attorneys fees, including those incurred for the special motion, any motion to dissolve the memorandum of lis pendens, and any related discovery. Nothing in this section shall affect the right of the moving party to any other remedy otherwise authorized by law. All discovery proceedings shall be stayed upon the filing of the special motion pursuant to this section; but the court, on motion and for good cause shown, may order that specified discovery be conducted. The stay of discovery shall remain in effect until notice of entry of the order ruling on the special motion. In the event there are un-adjudicated claims remaining after the dismissal of any claim pursuant to which the memorandum of lis pendens was recorded, the court shall order the entry of partial judgment with respect to the claim dismissed pursuant to this section."

dum of lis pendens; and (c) awarding defendants their reasonable attorney's fees and costs pursuant to G. L. c. 184, § 15(d). HJB filed a motion seeking the same relief.

Both motions to dismiss were heard by the judge who had heard and denied the plaintiffs' initial request for injunctive relief. On the following day the judge issued a memorandum of decision and order on the defendants' motions, dissolving the memorandum of lis pendens, dismissing all counts of the plaintiffs' first amended complaint, and granting attorney's fees and costs to the defendants. After a presentation of evidence with respect to fees and costs, the judge awarded WRI and HJB a total of $70,949.27. On November 15, 2004, the plaintiffs filed their notice of appeal to a full panel of the Appeals Court pursuant to G. L. c. 184, § 15(d), and the second paragraph of G. L. c. 231, § 118. The case was entered on the docket of this court on December 10, 2004.

*The condominium.* The 55 Temple Place Condominium is a commercial office condominium comprising seven condominium units. The condominium was created by master deed recorded in 1982. The master deed created an unincorporated association of the condominium unit owners, the "55 Temple Place Association," named the initial board of managers of the association, and established the by-laws of the association, including a procedure for managing the condominium's affairs through the board of managers. Each unit owner of the condominium has the right to appoint a single member of the board of managers of the association.

The by-laws provide that the management of condominium business shall be governed by votes equal in weight "to the percentage of the undivided interest in the common areas and facilities" of the condominium held by the unit owners. A quorum for board action for all purposes other than a master deed amendment affecting the common areas requires seventy-five percent of the total voting interest.

During the time relevant to this dispute, WRI owned and controlled approximately eighty-five percent of the condominium common area and voting power, exceeding the seventy-five percent requirement. The plaintiffs owned approximately fifteen percent of the common area and voting power of the

condominium. For the time that the condominium was owned by plaintiffs and WRI in this way (2001-2004), all actions requiring a vote of the condominium unit owners were achieved by written consent, signed by both, pursuant to the by-laws. While the parties differ with respect to whether appropriate formal notice of the proposed sale was given by WRI or waived by the plaintiffs, it is undisputed that WRI consulted consistently with the plaintiffs throughout 2001-2004 on all condominium business, including the sale to HJB that is the subject of this litigation.

The plaintiffs are husband and wife, and own and control the second-floor unit of the condominium in their individual names as joint tenants. As joint owners, their seat on the board is held jointly, as is their minority interest in the condominium association.

The master deed contains detailed provisions with respect to a right of first refusal that must be offered to the association, through its board of managers, by any unit owner wishing to sell his or her unit. These provisions include a requirement that the seller provide written notice to the board of managers of the terms of the proposed sale and to offer to sell the unit(s) to the board of managers or their assignee on the same terms. The board may purchase for the benefit of all unit owners, or may assign the right to any other unit owner. Any purported sale in violation of these provisions is voidable at the election of the board. The board may release or waive the right.

*Sale by WRI.* In April, 2003, the plaintiffs expressed an interest in purchasing WRI's units in the condominium. In May, 2003, the plaintiff Galipault informed WRI's representatives that the plaintiffs no longer had any interest in purchasing the units,[4] and indicated that the plaintiffs would assist in facilitating WRI's sale of its units to others.

In April, 2004, WRI entered into a purchase and sale (P&S) agreement with HJB for the sale of the six units for the sum of $1,460,000.

---

[4] In an affidavit, an agent for WRI stated that Galipault told him that he was "not interested in purchasing the building," that "the rents just don't work," and that he was "not interested." Galipault, in a counteraffidavit, stated that he never told anyone that he was not interested at any price.

The plaintiffs were aware of the details of the agreement of sale with HJB, including the identity of the purchaser and the amount of the sale.[5] No formal notice of the sale was given to the board of managers before WRI signed the P&S agreement. Galipault told WRI that although he believed that a notice of the possible sale should have been given before the P&S agreement was signed, WRI could "simply pre-date" such notice. WRI never considered such "pre-dating." Galipault also stated at this time that the plaintiffs would either supply a written consent to, or waiver of, their interest in the condominium board of managers' right of first refusal, and would assist in facilitating the sale to HJB.

On April 27, 2004, WRI provided formal notice to Lee, as a manager of the condominium board of managers, informing the board under the master deed that a bona fide offer to purchase all of WRI's units in the condominium had been received, and offering the units to the board on the same terms. The notice was duly acknowledged as received by the board of managers on April 27, 2004.

After learning of WRI's intended sale of its units to HJB in 2004, the plaintiffs began marketing their own unit. On or about

---

[5]The purchase and sale agreement was dated April 1, 2004. In his affidavit in support of the motion to dismiss, James Lee, who is the manager of WRI and one of two members of the condominium's board of managers, averred that Galipault was aware of the pending sale, including the name of the owner and the amount of the purchase price. In connection with the P&S agreement, Galipault urged in an electronic mail message (e-mail) to Lee on April 22, 2004, that "we should . . . [m]ake out the right-of-first-refusal." Galipault further stated that according to his real estate lawyer, the right of first refusal "should be agreed to in writing before the P&S is signed. . . . [I]f that's so, then simply pre-date it." The e-mail further urges that "[w]e need to see the financials. For our own protection, just to be sure everything is okay there." In a related e-mail, dated May 20, 2004, Galipault inquired of Lee whether "Safar [the buyer] is back yet." He again inquired about the financials of the buyer "and the waiver of right of first refusal." The foregoing provides ample evidence which the judge could credit to support WRI's contention that plaintiffs knew of the impending sale and had agreed to facilitate its completion. Further, in an affidavit dated July 8, 2004, Galipault stated that "[i]n or about mid-June, 2004, I inquired with Mr. Lee whether he would need a waiver [of the right of first refusal] from me in order for the proposed sale to Mr. Safar [viz., HJB] to proceed. . . . At the time, had I been informed it was necessary, I would have been willing to provide a waiver of my rights in order to permit [WRI] to sell its units to Mr. Safar."

June 2, 2004, Galipault advised WRI that the plaintiffs had received an offer from a bona fide purchaser, one Gilly Strauss, for $450,000. Although not set out in the written offer, Strauss conditioned the sale on a review of the condominium documents and his approval of them. After review, Strauss required that as a condition of the sale, certain changes be made to the condominium documents. The plaintiffs accepted the offer, subject to the conditions, and they advised WRI that they were prepared to accept the offer. At this time, the plaintiffs did not advise WRI that Strauss required these amendments, but they informed WRI of the required changes just prior to the closing on the plaintiffs' unit.

The plaintiffs had agreed to obtain the proposed condominium document amendments despite their knowledge that (a) acting alone they lacked the necessary authority to obtain the amendments; (b) the plaintiffs did not possess any agreement with WRI regarding amendments; and (c) WRI had entered into the P&S agreement with HJB for the sale of all of the remaining units of the condominium. WRI did not object when advised of the requested changes, but advised the plaintiffs that, because WRI's units were subject to agreement with HJB, any changes to the condominium documents would have to be approved by HJB.

By July 8, 2004, the plaintiffs could not timely procure and deliver approval of the proposed amendments to the condominium documents from HJB. The sale to Strauss failed. This lawsuit was commenced immediately thereafter. In their complaint, the plaintiffs indicated an ongoing interest in purchasing the remaining units. HJB closed on its purchase of WRI's units on July 9, 2004, following full disclosure to HJB of the existence of this litigation and the outcome of Galipault's request for the injunction.

*Propriety of the appeal.* The plaintiffs appeal pursuant to a provision in G. L. c. 184, § 15(*d*), that provides that "[a]ny party aggrieved by a ruling under [§ 15(*c*)] . . . may appeal pursuant to the first or second paragraphs of [G. L. c. 231, § 118]." See generally *Shrewsbury* v. *Seaport Partners Ltd. Partnership,* 63 Mass. App. Ct. 272, 274-276 (2005). In a partial motion to dismiss the appeal, referred to the panel for decision,

HJB urges that because the case comes before this court under the second paragraph of § 118, that portion of the appeal challenging the allowance of the special motion to dismiss and the order awarding fees and costs is premature. HJB argues that § 118, providing for interlocutory appeals, should apply only to the order dissolving the memorandum of lis pendens, as it is the only interlocutory order properly before the court. HJB argues further that, given the continued pendency of its counterclaims and cross claims and those of WRI, final judgment has not entered on the order granting the special motions to dismiss or the award of fees and costs, and that our consideration of the appeals at this time would be premature. See, e.g., *Ashford* v. *Massachusetts Bay Transp. Authy.*, 421 Mass. 563, 565 (1995); *Long* v. *Wickett*, 50 Mass. App. Ct. 380, 388 (2000). "It is settled to the level of dogma that, subject to a few specific recognized exceptions, appellate review may proceed only from a final judgment." *LaLonde* v. *LaLonde*, 28 Mass. App. Ct. 969, 969 (1990). We conclude that the statutory language contained in G. L. c. 184, § 15(*d*), authorizing appeals under G. L. c. 231, § 118, creates a new exception.

In order to discern legislative meaning, "[t]he general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that its purpose of its framers may be effectuated." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). See *Bartlett* v. *Greyhound Real Estate Fin. Co.*, 41 Mass. App. Ct. 282, 286 (1996). Here, the statute provides for certain remedies in G. L. c. 184, § 15(*c*), including the dissolution of the memorandum of lis pendens, dismissal of the complaint, and a mandatory award of fees and costs upon such dismissal. General Laws c. 184, § 15(*d*), permits any party aggrieved by a ruling under § 15(*c*), to appeal under the first or second paragraph of G. L. c. 231, § 118, with no limitation as to whether the ruling dissolves the memorandum of lis pendens or dismisses the action. Further, § 15(*d*) provides that an order dissolving a memorandum of lis pendens or an order or judgment dismissing the claimant's action shall become final thirty

days after entry, unless the party seeking the memorandum has filed an appeal.

We have held that where a special motion to dismiss, not dispositive of the entire case, has been allowed under the "anti-SLAPP" statute, G. L. c. 231, § 59H, such action is not appealable until entry of a final judgment. See *Metzler v. Lanoue*, 62 Mass. App. Ct. 655, 657-658 (2004). That statute, however, unlike G. L. c. 184, § 15(*d*), contains no provisions either permitting appeal of an order to dismiss under the provisions of G. L. c. 231, § 118, on an interlocutory basis, or providing that the order or judgment of dismissal is to become final thirty days after entry if there is no appeal. We shall deny HJB's partial motion to dismiss and proceed to consider the appeal in its entirety.

*The appeal.* The focus of our review under G. L. c. 231, § 118, is "whether the trial court abused its discretion — that is, whether the court applied proper legal standards and whether the record discloses reasonable support for its evaluation of factual questions." *Caffyn v. Caffyn*, 441 Mass. 487, 490 (2004), quoting from *Edwin R. Sage Co. v. Foley*, 12 Mass. App. Ct. 20, 25 (1981). See *Packaging Indus. Group, Inc. v. Cheney*, 380 Mass. 609, 615 (1980).

The 2002 amendment to G. L. c. 184, § 15, created "a mechanism for expedited removal of an unjustified lis pendens, including dismissal of frivolous claims supporting an approved lis pendens." *Wolfe v. Gormally*, 440 Mass. 699, 705 (2004) (commenting on amendment while interpreting language of statute prior to amendment). According to the statute, "[t]he special motion to dismiss shall be granted if the court finds that the action or claim is frivolous because (1) it is devoid of any reasonable factual support; or (2) it is devoid of any arguable basis in law; or (3) the action or claim is subject to dismissal based on a valid legal defense such as the statute of frauds. In ruling on the special motion to dismiss the court shall consider verified pleadings and affidavits, if any, meeting the requirements of the Massachusetts rules of civil procedure. If the court allows the special motion to dismiss, it shall award the moving party costs and reasonable attorneys fees . . . ." G. L. c. 184, § 15(*c*). While G. L. c. 184, § 15, differs from the anti-SLAPP

statute in some respects,[6] both are designed to provide protection from certain types of suits.

In ruling on the special motion under § 15(c), the judge "shall consider verified pleadings and affidavits" — language that is similar to that in G. L. c. 231, § 59H. Our review under G. L. c. 231, § 118, involves an "analysis [that] calls for an examination of the same factors properly considered by the judge in the trial court in the first instance. His conclusions of law are subject to broad review and will be reversed if incorrect. While weight will be accorded to his exercise of discretion, an order predicated solely on documentary evidence permits the appellate court to draw its own conclusions from the record . . . [but] we must exercise special care not to substitute our judgment for that of the trial court where the records disclose reasoned support for its action." (Citation omitted.) *Edwin R. Sage Co.* v. *Foley*, 12 Mass. App. Ct. at 25-26. With this in mind, we consider whether, in dissolving the memorandum of lis pendens and in dismissing the plaintiffs' action and awarding fees and costs, the judge committed an error of law or abused his discretion in applying the standards of G. L. c. 184, § 15(c).

As a threshold matter, the statute provides that the proceeding underlying a request for a memorandum of lis pendens must be commenced by a complaint including a certification from the movant that "no material facts have been omitted therefrom." G. L. c. 184, § 15(b).

In moving to dissolve the memorandum of lis pendens that was attached to its property, HJB set forth a full chronology of the facts and circumstances that led to HJB's purchase of the WRI units. The Superior Court judge was warranted on the evidence to determine that the plaintiffs omitted significant and material facts in their first amended verified complaint, and in their request for a memorandum of lis pendens. Moreover, the plaintiffs did not dispute the accuracy of many of the facts contained in HJB's motion, nor did they challenge their relevancy. The more significant material omissions in the plaintiffs' verified pleadings included information concerning

---

[6]For example, under the anti-SLAPP statute a special movant must make a threshold showing, at which time the burden shifts to the nonmovant. See *MacDonald* v. *Paton*, 57 Mass. App. Ct. 290, 292 (2003).

their discussions with WRI about the proposed sale to HJB and their commitment to facilitate the transfer by waiver or otherwise, and information concerning the plaintiffs' failed sale to Strauss and their inability to obtain certain amendments to the condominium documents.

The evidence would warrant findings that the plaintiffs were well aware of WRI's sale of its units several months before the closing, that they indicated a desire to facilitate that sale, that they advised WRI that they would waive any purported right of first refusal and that they sought to sell their own unit, and that only when their sale failed did they purport to exercise a right of first refusal and commence this action.

The plaintiffs' conduct before, during, and after learning of HJB's interest purchasing the WRI units, and the interaction between the parties to this lawsuit (and other involved parties) after the execution of the P&S agreement between WRI and HJB through the date of closing on the sale (a three-month period) were clearly material to the relief that the plaintiffs sought in this action, and, in particular, in obtaining a memorandum of lis pendens. The Superior Court judge was correct in ruling that the plaintiffs violated the explicit statutory language of G. L. c. 184, § 15(*b*), and that their claim on this basis was frivolous.

In their complaint, the plaintiffs also claim an interest in the subject property by virtue of the possibility of receiving an assignment of the right of first refusal. We conclude that there was no error in the dismissal of the plaintiffs' claim for declaratory judgment, and that the judge was correct in ruling that the plaintiffs did not own the right of first refusal, derivatively or otherwise, that was set forth in the condominium documents, and that they did not receive (or even seek) an assignment of the right of first refusal, but instead proceeded to suit seeking reversal of a transaction to which they were not a party.

It is well settled that in order for a court to entertain a petition for declaratory relief, (a) an actual controversy sufficient to withstand a motion to dismiss must appear on the pleadings; and (b) even if there is a finding of actual controversy, a plaintiff must demonstrate the requisite legal standing to secure its resolution. See G. L. c. 231A, §§ 1 et seq.; *Massachusetts Assn. of Indep. Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*,

373 Mass. 290, 292 (1977). "The purpose of both the actual controversy and the standing requirements is to ensure the effectuation of the statutory purpose of G. L. c. 231A, which is to enable a court 'to afford relief from . . . uncertainty and insecurity with respect to rights, duties, status and other legal relations.' G. L. c. 231A, § 9, inserted by St. 1945, c. 582, § 1. Such proceedings are concerned with the resolution of real, not hypothetical, controversies; the declaration issued is intended to have an immediate impact on the rights of the parties." *Ibid.*

Here, declaratory relief is unavailable because the plaintiffs do not possess a right of first refusal under the condominium documents or otherwise. They never sought or obtained an assignment of the right of first refusal from the board. To the contrary, until their own sale failed, they had expressed some slight interest, but had never pursued purchase of the units.

There was also no error or abuse of discretion in the dismissal of the plaintiffs' first amended complaint insofar as it sought rescission and injunctive relief.

By their complaint, the plaintiffs sought a reversal of a significant commercial real estate transaction. The plaintiffs, however, were never a party to the transaction they sought to rescind, and have no right to rescission of that transaction. See *Lang* v. *Giraudo*, 311 Mass. 132 (1942); Nolan & Sartorio, Equitable Remedies § 403, at 543-544 (2d ed. 1993). See also *Cummings's Case*, 52 Mass. App. Ct. 444, 447 n.8 (2001) ("Rescission is an equitable remedy granted when there has been a mutual mistake of fact or fraud between the parties").[7]

The record before the trial judge contained strong evidence that the plaintiffs were originally offered the WRI units and declined, and further that plaintiffs knew of the existence of the

[7]Further, the plaintiffs' claim that they are intended beneficiaries of the provisions of the master deed and therefore entitled to a remedy for their breach, is without merit here. Any claim relating to the lack of notice is vitiated by Galipault's suggestion that such notice be back dated, and by his admission that he was prepared to sign a waiver in order for the sale to go through. As well, to the extent that Lee and WRI may have owed a fiduciary duty to the plaintiffs as minority owners having less than fifteen percent say in the management of the condominium, the record amply supports a determination that the duty was not breached, as was alleged in the plaintiffs' complaint and argued on appeal, further supporting the judge's ultimate conclusion that the plaintiffs' suit was frivolous.

offer from HJB to WRI. Indeed, plaintiff Galipault admits in his affidavit of July 8, 2004, that "[i]n or about mid-June, 2004, I inquired with Mr. Lee whether he would need a waiver [of the right of first refusal] from me in order for the proposed sale to Mr. Safar [viz., HJB] to proceed. . . . At the time, had I been informed it was necessary, I would have been willing to provide a waiver of my rights in order to permit [WRI] to sell its units to Mr. Safar."

This admission, considered in connection with the last-minute, surprise litigation, demonstrates that the plaintiffs' conduct in filing the suit was aimed at achieving a goal other than adjudication of their rights. At the very least, the plaintiffs' intent is as stated in Galipault's affidavits, signed on two separate occasions (July 8 and October 18, 2004): "As a result of Mr. Safar's conduct . . . I do not want to remain in the building as a co-tenant with [him]."

As to the claim for specific performance, it is axiomatic that one must have behaved equitably in order to obtain equitable remedies. "Specific performance is an equitable remedy which should not be granted when the requesting party has engaged in conduct 'savored with injustice touching the transaction.' " *Hawthorne's, Inc.* v. *Warrenton Realty, Inc.*, 414 Mass. 200, 208 (1993), quoting from *Economy Grocery Stores Corp.* v. *McMenamy*, 290 Mass. 549, 552 (1935), and citing *Chute* v. *Quincy*, 156 Mass. 189, 191 (1892) ("[s]pecific performance may be refused . . . where there has been . . . unfair conduct"). See Nolan & Sartorio, Equitable Remedies, *supra* § 262.

In this case, (a) the plaintiffs lack the requisite capacity to sue for rescission, as they were never a party to the contract they seek to reverse; (b) the plaintiffs never sought any form of assignment of the right of first refusal, despite their actual knowledge of the transaction; and (c) the plaintiffs' conduct, late in the chronology, is "savored with injustice touching the transaction," and is patently unfair. Under principles stated by the Supreme Judicial Court in *Hawthorne's, Inc.* v. *Warrenton Realty, Inc.*, *supra*, the trial judge properly denied the requested relief.

Finally, the judge did not abuse his discretion or commit error of law in awarding HJB and WRI costs and attorney's fees

in the amounts of $34,507.78 and $36,441.49, respectively. General Laws c. 184, § 15(*c*), mandates the award of costs and attorney's fees if the court allows a special motion to dismiss:

> "If the court allows the special motion to dismiss, it shall award the moving party costs and reasonable attorneys fees, including those incurred for the special motion, any motion to dissolve the memorandum of lis pendens, and any related discovery."

The plaintiffs did not oppose the motions for fees and costs at the time they were filed, and they have not opposed or otherwise requested reconsideration of the motions in the Superior Court.

A trial judge has considerable discretion in awarding attorney's fees under applicable statutes, and when made, the award is presumed to be right and should not be disturbed without a showing that the award is excessive. *Keville* v. *Mc-Keever*, 42 Mass. App. Ct. 140, 155-156 (1997), citing *Rhode Island Hosp. Trust Natl. Bank* v. *Burns*, 12 Mass. App. Ct. 251, 254 (1981); *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 324 (1993). "When attorney's fees are awarded, the amount is in the discretion of the trial judge, *McGrath* v. *Mishara*, 386 Mass. 74, 87 (1982), and we shall reverse the decision only if it is clearly erroneous. *Kennedy* v. *Kennedy*, 400 Mass. 272, 274 (1987) . . . ." *Cargill, Inc.* v. *Beaver Coal & Oil Co.*, 424 Mass. 356, 363 (1997). On our review, we conclude that the awards of costs and attorney's fees were not clearly erroneous.

The plaintiffs argue that "there is no indication that the trial judge considered *any* of the factors articulated by the courts as relevant to the determination of whether or not the defendants' attorney's fees were fair and reasonable." The trial judge's orders awarding fees, however, belie this assertion. In awarding costs and fees to HJB, the judge stated, "[a]fter review of the motion, the affidavit submitted in support of the motion, and the billing invoice records, the court approves the motion for costs and attorneys' fees, filed pursuant to [G. L. c. 184, § 15(*c*)], as reasonable and factually supported," indicating a full consideration of the materials and the relevant factors. A similar endorsement appeared as to the motion of WRI and Lee.

The order dissolving the memorandum of lis pendens and

dismissing the plaintiffs' action, and the orders awarding attorney's fees and costs to the defendants, are affirmed. We will also allow the defendants' requests for attorney's fees and costs with respect to this appeal. Each may file a petition within fourteen days of the issuance of the rescript of this opinion, together with supporting materials, and the plaintiffs shall have fourteen days thereafter to respond. See *Fabre* v. *Walton,* 441 Mass. 9, 10-11 (2004). The case is remanded to the Superior Court for further proceedings with respect to the remaining cross claims and counterclaims.

*So ordered.*