NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

16-P-735                                    Appeals Court

CITADEL REALTY, LLC  vs.  ENDEAVOR CAPITAL NORTH, LLC, & others.[1]

No. 16-P-735.

Suffolk.    November 7, 2017. - March 19, 2018.

Present: Wolohojian, Massing, & Wendlandt, JJ.

Practice, Civil, Interlocutory appeal, Motion to dismiss, Declaratory proceeding. Lis Pendens. Declaratory Relief. Mortgage, Foreclosure, Discharge. Notice, Foreclosure of mortgage. Real Property, Mortgage.

Civil action commenced in the Superior Court Department on January 29, 2016.

A special motion to dismiss was heard by William F. Sullivan, J.

Jonas A. Jacobson for the plaintiff.
Scott K. DeMello (Rosemary A. Traini also present) for the defendants.

WENDLANDT, J. This appeal presents occasion to clarify the scope of this court's review of an interlocutory order denying a

---

[1] Endeavor Capital Funding, LLC (formerly known as Endeavor Capital Trust Funding, LLC); Endeavor High Yield Mortgage Fund, LLC; and Ricochet Real Estate, LLC.

special motion to dismiss brought pursuant to G. L. c. 184, § 15, the lis pendens statute.  Here, the defendants sought to dismiss the entire action, including (1) one claim supporting the memorandum of lis pendens and affecting title, and (2) other claims that were not the basis for the lis pendens.  We hold that our review is limited to those portions of the interlocutory order supporting the memorandum of lis pendens.

Citadel Realty, LLC (Citadel), filed a complaint in the Superior Court against the defendants, seeking to void the foreclosure sale of Citadel's real property in the Dorchester section of Boston (property).  In addition, Citadel sought damages and reformation of the underlying mortgages.  Following the filing of its verified amended complaint, Citadel filed a motion for approval of a memorandum of lis pendens, pursuant to G. L. c. 184, § 15(b), which was allowed.  The defendants filed a motion opposing the approval of the memorandum of lis pendens and seeking to dismiss the complaint, which was, in part, a special motion to dismiss pursuant to G. L. c. 184, § 15(c).  The motion was denied.  The defendants filed the present interlocutory appeal from the denial of their motion to dismiss, purporting to appeal the motion judge's decision declining to dismiss both the claim supporting the lis pendens and affecting title, and the claims that did not support the lis pendens.

Background.  We set forth the facts from the verified pleadings and affidavits that were before the judge.  G. L. c. 184, § 15(c).  In 2011, Mario Lozano approached Endeavor Capital, LLC (Endeavor),[2] seeking a loan in connection with the property.  Endeavor and Lozano entered into a term sheet, pursuant to which Citadel[3] borrowed $250,000 from one of the Endeavor subsidiaries.[4]  The loan was secured by a first mortgage (2011 mortgage) on the property and was guaranteed by Lozano personally.  The 2011 mortgage had a six-month term, a fourteen percent interest rate, and was subject to a six percent origination fee.

Citadel was unable to repay the principal within the six-month term.  Thereafter, Citadel entered into a series of six-month extensions with Endeavor Capital Funding, LLC (ECF).  Each time, Citadel was unable to refinance with another lender, and was under the threat of foreclosure.  Each time, Citadel paid another six percent fee, and increased the principal balance.

---

[2] Endeavor is the parent company of each of the defendants Endeavor Capital North, LLC, Endeavor Capital Funding, LLC, and Ricochet Real Estate, LLC, and a shareholder of the defendant Endeavor High Yield Mortgage Fund, LLC.  We hereafter refer to the defendants collectively as the "Endeavor subsidiaries."

[3] As part of the transaction, Citadel was formed with Lozano as its sole member; Lozano assigned the property to Citadel.

[4] The subsidiary was Capital Trust Funding, LLC, which subsequently changed its name to Endeavor Capital Funding, LLC.

All told, Citadel paid $121,742.06 in interest-only payments, but was unable to repay the principal before termination of the last extension.

In 2014, Lozano approached Endeavor to discuss a potential refinancing. Lozano entered into a second term sheet with Endeavor, pursuant to which Citadel entered into a new mortgage agreement (2014 mortgage) with another Endeavor subsidiary as determined by Endeavor.[5] This loan had a principal of $384,000 and was secured by a new first mortgage on the property. Like the 2011 mortgage, the 2014 mortgage had a six-month term, a fourteen percent interest rate, and was subject to a six percent origination fee. The loan was used, as the parties had agreed, to pay the outstanding principal of the 2011 loan;[6] however, no discharge of the 2011 mortgage was recorded at the registry of deeds.

Citadel defaulted on the 2014 mortgage and foreclosure proceedings commenced.[7] In May, 2015, the foreclosure sale of

---

[5] The Endeavor subsidiary was Endeavor Capital North, LLC, which assigned the 2014 mortgage to another Endeavor subsidiary, Endeavor High Yield Mortgage Fund, LLC.

[6] The loan was also used to pay taxes and other payments due on the property.

[7] In a separate action, Lozano filed a complaint in Superior Court, seeking an injunction to stop the foreclosure proceedings. A judge of that court denied relief, and the action was dismissed without prejudice in September, 2015.

the property was held.  One of the Endeavor subsidiaries, Endeavor High Yield Mortgage Fund, LLC (EHYMF), both conducted the sale and submitted the winning bid of $475,000.[8]

In January, 2016, Citadel filed a verified amended complaint against the Endeavor subsidiaries, seeking a declaratory judgment that the foreclosure sale was void because the Endeavor subsidiaries' failure to discharge the 2011 mortgage violated their duty to conduct the sale in good faith and with reasonable diligence (declaratory judgment count).  See U.S. Bank Natl. Assn. v. Ibanez, 458 Mass. 637, 647 n.16 (2011).  Citadel claimed that because no discharge of the 2011 mortgage had been recorded in the registry of deeds, the appearance of the mortgage in the chain of title dissuaded otherwise interested bidders from bidding on the property, thereby allowing EHYMF to purchase the property for itself at a price that was lower than its market value.  In addition, the

_____

[8] Following the sale, EHYMF conveyed the property by foreclosure deed to another Endeavor subsidiary, Ricochet Real Estate, LLC.  Ricochet commenced summary process actions in the Housing Court against Lozano and his daughter, who raised a defense that Ricochet was not the owner of the property because the foreclosure sale was void, essentially arguing the same grounds as presented in the verified amended complaint in this action.  Following trial on the summary process complaints, judgments entered for Ricochet, and the Lozanos subsequently appealed to this court.  We affirm the summary process judgments in a memorandum and order pursuant to our rule 1:28 issued today.  See Ricochet Real Estate, LLC v. Lozano, 93 Mass. App. Ct.      (2018).

complaint sought damages and reformation of the underlying mortgages on the grounds that (a) the Endeavor subsidiaries violated G. L. c. 183, § 55; (b) both mortgages were unconscionable; (c) the Endeavor subsidiaries were unjustly enriched; and (d) the Endeavor subsidiaries violated G. L. c. 93A. Citadel moved, pursuant to G. L. c. 184, § 15(b), for approval of a memorandum of lis pendens to be recorded against the property. Citadel argued that the declaratory judgment count constituted a claim of right to title to real property. The Endeavor subsidiaries opposed the motion and filed a motion to dismiss all of the counts of the amended complaint. That motion was styled as a special motion to dismiss, pursuant to G. L. c. 184, § 15(c), but also included arguments that the entire complaint should be dismissed for failure to state a claim under Mass.R.Civ.P. 12(b)(6), 365 Mass. 757 (1974).[9] The

---

[9] Although the special motion to dismiss was filed under G. L. c. 184, § 15, the Endeavor subsidiaries further argued that they had "valid legal defenses pursuant to [r]ule 12(b)(6)." It is clear that, as a general matter, the denial of a rule 12(b)(6) motion is not appealable until the ultimate disposition of the case. See Brum v. Dartmouth, 428 Mass. 684, 687 (1999). See also Wright & Miller, Federal Practice & Procedure § 1357, at 772 (3d ed. 2004) ("[A] denial of a motion to dismiss does not produce a final judgment").

judge approved the memorandum of lis pendens and denied the Endeavor subsidiaries' special motion.[10]  This appeal followed.

2.  Discussion.  We begin by clarifying the scope of our review of the interlocutory order.  "As a general rule, an aggrieved litigant cannot as a matter of right pursue an immediate appeal from an interlocutory order unless a statute or rule authorizes it."  Elles v. Zoning Bd. of Appeals of Quincy, 450 Mass. 671, 673-674 (2008).  See Fabre v. Walton, 436 Mass. 517, 520-521 (2002) ("[A]bsent special authorization . . . an appellate court will reject attempts to obtain piecemeal review of trial rulings that do not represent final dispositions on the merits" [quotation omitted]).  The rule is grounded in the policy that "a party ought not to have the power to interrupt the progress of the litigation by piecemeal appeals that cause delay and often waste judicial effort in deciding questions that will turn out to be unimportant."  Borman v. Borman, 378 Mass. 775, 779 (1979), quoting from Vincent v. Plecker, 319 Mass. 560, 563 n.1 (1946).  As a result, "the denial of a motion to dismiss is ordinarily not an appealable order."  Fabre, supra at 521.

One exception to this general rule arises from G. L. c. 184, § 15(d), of the lis pendens statute, which provides that

---

[10] The judge originally dismissed the declaratory judgment count of Citadel's complaint, but later clarified the dismissal of that count was in error.

any party aggrieved "by a ruling under [§ 15](c)" may file an interlocutory appeal.  Section 15(c), in turn, provides a mechanism for "expedited removal of an unjustified [memorandum of] lis pendens" by filing a special motion to dismiss.[11]  Wolfe v. Gormally, 440 Mass. 699, 705 (2004).  See G. L. c. 184, § 15(c).  In particular, a party may file

> "a special motion to dismiss the claimant's action if that party believes the action or claim supporting the memorandum of lis pendens is frivolous. . . .  The special motion to dismiss shall be granted if the court finds that the action or claim is frivolous because (1) it is devoid of any reasonable factual support; or (2) it is devoid of any arguable basis in law; or (3) the action or claim is subject to dismissal based on a valid legal defense such as the statute of frauds. . . .  In the event there are un-adjudicated claims remaining after the dismissal of any claim pursuant to which the memorandum of lis pendens was recorded, the court shall order entry of partial judgment with respect to the claim dismissed pursuant to this section."

G. L. c. 184, § 15(c), as appearing in St. 2002, c. 496, § 2 (emphases supplied).

"[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that its purpose of its framers may be

---

[11] In the case where the memorandum of lis pendens is approved ex parte, G. L. c. 184, § 15(c), also permits an aggrieved party to move to dissolve the memorandum.

effectuated." Galipault v. Wash Rock Invs., LLC, 65 Mass. App. Ct. 73, 80 (2005), quoting from Hanlon v. Rollins, 286 Mass. 444, 447 (1934). The plain and ordinary meaning of the language of the statute here makes the special motion to dismiss mechanism available for the "action or claim supporting the memorandum of lis pendens." G. L. c. 184, § 15(c). Where each of the claims of an action supports the memorandum of lis pendens, the special motion to dismiss is available for each claim. Importantly, however, where only some claims support the memorandum of lis pendens, the statute anticipates that other claims not giving rise to a memorandum of lis pendens, referred to as "unadjudicated claims," will not be subject to the special motion to dismiss mechanism. Because G. L. c. 184, § 15(d), makes an interlocutory appeal available only as to "a ruling under [§ 15](c)," and because such rulings are limited to claims supporting the memorandum of lis pendens -- that is, "affect[ing] the title to real property or the use and occupation thereof," G. L. c. 184, § 15(a) -- our review is available only as to the judge's rulings as to those claims.

Reviewing only the portion of the interlocutory order denying dismissal of claims supporting the memorandum of lis pendens is consistent with the purpose of the lis pendens statute to "add procedural safeguards to the formerly unfettered right to record a lis pendens," Wolfe, 440 Mass. at 703; in

contrast, expanding our review to other claims does not specifically further that purpose. Accordingly, we hold that our review of an interlocutory order allowing a memorandum of lis pendens and otherwise denying a special motion to dismiss under § 15(c) is limited to those claims supporting the memorandum of lis pendens.

Here, the memorandum of lis pendens was supported by one claim -- namely the declaratory judgment count in which Citadel seeks to void the foreclosure sale of the property. The remaining counts did not support the memorandum of lis pendens. Accordingly, we decline to review the judge's denial of the motion to dismiss as to those counts.

b. Declaratory judgment. We review a judge's decision allowing a memorandum of lis pendens and denying a special motion to dismiss to determine whether the judge committed an error of law or abused his discretion. McMann v. McGowan, 71 Mass. App. Ct. 513, 519 (2008). "Our review . . . involves an 'analysis [that] calls for an examination of the same factors properly considered by the judge in the trial court in the first instance. His conclusions of law are subject to broad review and will be reversed if incorrect. While weight will be accorded to his exercise of discretion, an order predicated solely on documentary evidence permits the appellate court to draw its own conclusions from the record . . . [but] we must

exercise special care not to substitute our judgment for that of the trial court where the records disclose reasoned support for its actions.'" Galipault, 65 Mass. App. Ct. at 82, quoting from Edwin R. Sage Co. v. Foley, 12 Mass. App. Ct. 20, 25-26 (1981).

The Endeavor subsidiaries argue that the judge erred in allowing the memorandum of lis pendens and denying their special motion to dismiss because Citadel's challenge to the foreclosure sale is frivolous.[12]  In particular, they assert that the declaratory judgment count is devoid of a reasonable factual or legal basis because, in conducting the foreclosure sale, the Endeavor subsidiaries complied with each of the requirements of G. L. c. 244, § 14, to publish notice of the sale in a local newspaper, send notice of sale to the owner of the property, and send notice of the sale to all junior lienholders.[13]  G. L. c. 244, § 14.

---

[12] Under the lis pendens statute, an action or claim is frivolous if "(1) it is devoid of any reasonable factual support; or (2) it is devoid of any arguable basis in law; or (3) the action or claim is subject to dismissal based on a valid legal defense such as the statute of frauds."  G. L. c. 184, § 15(c).

[13] We reject the Endeavor subsidiaries' additional argument that the declaratory judgment count fails to set forth an actual controversy between the parties.  The amended complaint alleges that the Endeavor subsidiaries purchased the property at an artificially deflated price through a foreclosure sale that discouraged competing bidders by failing to discharge the 2011 mortgage in violation of the duty of good faith and reasonable diligence.  As a result, Citadel asserts that it remains the rightful owner of the property, to which the Endeavor

Compliance with G. L. c. 244, § 14, alone does not excuse a mortgagee from the additional requirement to act in good faith and with reasonable diligence in connection with a foreclosure sale. Pehoviak v. Deutsche Bank Natl. Trust Co., 85 Mass. App. Ct. 56, 62 (2014) (in addition to abiding by procedures outlined in G. L. c. 244, § 14, "mortgagee is bound to exercise good faith and put forth reasonable diligence" and "[f]ailure in these particulars will invalidate the sale even though there be literal compliance with the terms of the [statute]" [quotation omitted]). This duty of good faith and reasonable diligence is heightened where, as here, the mortgagee conducting the foreclosure sale is also the buyer of the property. Ibid. ("The mortgagee's duty is more exacting when it becomes the buyer of the property. When a party who is intrusted with a power to sell attempts also to become the purchaser, he will be held to the strictest good faith and the utmost diligence for the protection of the rights of his principal" [quotation omitted]). Under these circumstances, "the mortgagee has a duty to obtain for the property as large a price as possible." Ibid.

The Endeavor subsidiaries concede that the 2011 mortgage was not discharged even though, pursuant to the 2014

subsidiaries now claim legal title. These allegations are sufficient to state an actual controversy between the parties. Pazolt v. Director of the Div. of Marine Fisheries, 417 Mass. 565, 569 (1994).

refinancing, the principal of the loan was paid.[14]  As a result,

at the time of the foreclosure sale, the 2011 mortgage appeared

as an undischarged first mortgage of record in the chain of

title.  Citadel alleges that this information was readily

available to a prospective purchaser, discouraging potential

bidders[15] and adversely affecting the price paid for the

property.  See Maglione v. Bancboston Mort. Corp., 29 Mass. App.

Ct. 88, 88-89 (1990) ("[T]he presence of an undischarged

---

[14] The Endeavor subsidiaries argue that EHYMF (the mortgagee for the 2014 mortgage) did not have an obligation to discharge the 2011 mortgage when it was paid; they argue that the obligation belonged to ECF, the 2011 mortgagee.  In contrast, Citadel argues that EHYMF had a duty to discharge the mortgage because EHYMF and ECF are effectively the same entity.  The record before the trial judge showed that both the 2011 and 2014 term sheets were signed by Endeavor, the parent/shareholder of each of the Endeavor subsidiaries.  Endeavor determined which of its subsidiaries would be the mortgagee in 2011 and in 2014. Endeavor knew that the 2014 refinancing paid the loan underlying the 2011 mortgage.  Each of the Endeavor subsidiaries has the same managers, and in both 2011 and 2014, Lozano negotiated with the same Endeavor employee.  Given the stage of the litigation, the judge did not abuse his discretion in determining that Citadel's claim is not frivolous.

[15] The Endeavor subsidiaries also argue that any potential bidder who saw the 2011 mortgage on the record title would not have been discouraged from bidding because that bidder would know that it would not "be bound to complete the purchase if there are encumbrances, other than those named in the mortgage and included in the notice of sale, which are not stated at the sale and included in the auctioneer's contract with the purchaser."  G. L. c. 244, § 14, as appearing in St. 2012, c. 194, § 1.  While this may provide a basis for a defense that may help show that, in fact, no bidders were dissuaded from bidding on the property, it does not render Citadel's claim devoid of any reasonable factual or legal basis.  See Maglione v. Bancboston Mort. Corp., 29 Mass. App. Ct. 88, 88-89 (1990).

mortgage -- at least a recent one -- in a record chain of title will serve [to] . . . discourag[e] transactions in the encumbered property").  Thus, the judge did not abuse his discretion in finding that the Endeavor subsidiaries failed to show that Citadel's declaratory judgment count is devoid of reasonable factual and legal support.[16]

Order denying special motion<br>to dismiss affirmed.

_____

[16] The Endeavor subsidiaries' request for attorney's fees on appeal is denied.