WAYNE D. WOLFE & others[1] *vs.* JOHN J. GORMALLY, JR.

Suffolk. November 6, 2003. - January 16, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Real Property,* Record title, Restrictions. *Lis Pendens. Statute,* Construction.

Discussion of the evolution and purpose of G. L. c. 184, § 15, requiring
plaintiffs to obtain judicial authorization before recording a memorandum
of lis pendens, which any party aggrieved may contest. [702-703]
This court concluded that G. L. c. 184, § 15, permitted judicial endorsement
of memoranda of lis pendens in all actions affecting title, despite the limit-
ing language in the statute's second paragraph referring to a narrower class
of claims. [703]
A Land Court judge properly approved a memorandum of lis pendens filed by
landowners seeking to enforce restrictive covenants on some subdivision
lots they had sold, because such action affected the title to real property or
the use and occupation thereof, and thus should have been reflected on the
record title of the real estate, and because the 1985 legislative amendment
to G. L. c. 184, § 15, the lis pendens statute, was designed to give some
procedural protection to any party aggrieved, not to limit the statute's
remedial reach only to cases involving claims of a right to title. [704-707]

CIVIL ACTION commenced in the Land Court Department on
August 30, 2001.

A pretrial motion to dissolve a memorandum of lis pendens,
filed on October 4, 2002, was heard by *Karyn F. Scheier,* J.

An interlocutory proceeding in the Appeals Court for review
of the denial of the lis pendens motion was heard by *Kenneth
Laurence,* J.; review by a panel of the Appeals Court was
sought; and, while the appeal was pending, a motion to dismiss
the appeal as moot was heard by *Susan S. Beck,* J.

The Supreme Judicial Court granted an application for direct
appellate review.

*Wendy H. Sibbison* for the plaintiffs.
*Christopher B. Myhrum* for the defendant.

[1]More than fifty other landowners in the town of South Hadley.

*William V. Hovey*, pro se, amicus curiae, submitted a brief.

IRELAND, J. This case raises the question whether the record title of real estate should reflect the pendency of any action that "affects the title to real property or the use and occupation thereof" as that phrase is used in the first paragraph of the lis pendens statute, G. L. c. 184, § 15, as amended through St. 1985, c. 809.[2] It arises out of a common scheme of restrictive covenants imposed on a subdivision by the original developer and later reimposed by the successor developer, who sold some of the lots to the defendant, John J. Gormally, Jr. (developer), who now seeks to develop these lots allegedly in violation of

[2]Although the statute was rewritten in 2002, St. 2002, c. 496, § 2, it is the earlier version that concerns us here. The version of the statute applicable here reads as follows:

"A writ of entry or other proceeding, either at law or in equity, which affects the title to real property or the use and occupation thereof or the buildings thereon, shall not have any effect except against the parties thereto, their heirs and devisees and persons having actual notice thereof, until a memorandum containing the names of the parties to such proceeding, the court in which it is pending, the date of the writ or other commencement thereof, the name of the town where the real property liable to be affected thereby lies and a description of such real property sufficiently accurate for identification is recorded in the registry of deeds for the county or district where such real property lies; but this section shall not apply to attachments, levies of execution or proceedings, other than proceedings under equity jurisdiction, in the probate courts.

"Upon motion of any party, a justice of the court before which the action is pending shall, if the subject matter of the action constitutes a claim of a right to title to real property or the use and occupation thereof or the buildings thereon, make a finding to that effect and endorse said finding upon said memorandum. No register of deeds nor assistant recorder of any district of the land court shall accept such memorandum for recording unless it contains such endorsement and is accompanied by an affidavit to the effect that the moving party has served notice of the allowance of such motion by certified mail addressed to all other parties prior to the recording of the memorandum. In the event the finding is made pursuant to an ex parte proceeding, any party aggrieved thereby may by motion move the dissolution of the memorandum and the court shall hear said motion forthwith. At such hearing, the party whose motion was allowed ex parte shall have the burden of justifying any finding in the ex parte order which is challenged by the party aggrieved thereby. Any party aggrieved by any ruling under this section may appeal pursuant to the provisions of section one hundred and eighteen of chapter two hundred and thirty-one. Nothing herein shall deprive an owner of registered land from proceeding under the provisions of section one hundred and fourteen of chapter one hundred and eighty-five to challenge the validity of the registration of a memorandum of lis pendens."

the restrictions.[3] The plaintiff landowners seek to enforce the restrictions and argue that the Land Court properly approved their memorandum of lis pendens because the underlying action "affects" the title to the lots at issue. The developer contends that the landowners are not entitled to the lis pendens because the subject matter of their action does not constitute a "claim of a right to title" to real property. Because we conclude that the record title of real estate should reflect the pendency of any action to enforce a properly imposed plan of restrictive covenants, where such an action "affects the title to real property or the use and occupation thereof," as that phrase is used in the first paragraph of the statute, we affirm the issuance of the lis pendens by the Land Court.

*Background.*

The written, recorded restrictive covenants that form the basis of this suit were adopted by the original subdivision developers in 1989 and reimposed by the successor developer in 1995. These covenants both benefited the lots on which they were imposed, in assuring that the other lots of the subdivision would be developed consistent with the restrictions, and burdened each lot in compelling compliance with the restrictions. In 2000, the successor developer sold some of the lots to the defendant developer, who now seeks to build on these lots.

In the Land Court, the landowners sought both the enforcement of written restrictive covenants applicable to subdivision property owned by the developer, and ex parte approval of a memorandum of lis pendens, pursuant to the statute. Following the form identified in the second paragraph of the statute, the Land Court judge made the finding that the "subject matter of action constitutes a claim of a right to title to real property or the use and occupation thereof," and approved the lis pendens. The developer moved to dissolve the lis pendens. The judge denied the motion, and the developer petitioned for interlocu-

---

[3]After the landowners had filed suit, the developer recorded a document purporting to free his land from the restrictive covenants. The document was signed by the "former[] owners of certain parcels of land in South Hadley," who, at the time they signed the document, no longer had any interest in the land.

tory relief to a single justice of the Appeals Court, pursuant to the statute and G. L. c. 231, § 118, first par. The single justice dissolved the memorandum of lis pendens and the landowners appealed from that ruling to a panel of the Appeals Court. See G. L. c. 231, § 118, second par.; *Sutherland* v. *Aolean Dev. Corp.*, 399 Mass. 36, 39-40 (1987).

While the appeal was pending, the underlying case proceeded in the Land Court. After the landowners filed an amended complaint, the developer moved that the Appeals Court dismiss the appeal as moot, arguing that, because the amended complaint superseded the complaint pursuant to which the memorandum of lis pendens had been recorded, the landowners had to seek a new lis pendens. The motion was denied, but the parties were granted "leave to raise the mootness issue in their briefs." We granted the landowners' application for direct appellate review.

*Discussion.*

1. *Standard of review.* An appeal from the Land Court order brings before us "only questions of law apparent upon the record. Findings of fact cannot be revised." *Cerel* v. *Framingham*, 342 Mass. 17, 18 (1961). The question before us is whether the Land Court's "ultimate order is correct in law upon the facts found by the judge in [her] decision." *Ide* v. *Bowden*, 342 Mass. 22, 24 (1961).

2. *G. L. c. 184, § 15.* a. *Statute's evolution and purpose.* The purpose of the statute is to remedy a harsh common-law lis pendens rule by ensuring that prospective buyers have the benefit of recorded notice of certain lawsuits. Under the common law, if the subject property was sold "lis pendens," i.e., while the suit was pending, a buyer without notice of the litigation was nonetheless "bound by the judgment." J.L. Bennett, Lis Pendens 65 (1887). The statute, first enacted by St. 1877, c. 229, §§ 1, 3, "ameliorated the harsh effects of the common law rule" by providing that buyers acquiring interest in property subject to suit were not bound by the judgment unless "a memorandum of lis pendens was filed in the registry of deeds before the acquisition." *Debral Realty, Inc.* v. *DiChiara*, 383 Mass. 559, 560, 561 (1981). See *Heller* v. *Turner Bros. Constr.*, 40 Mass. App. Ct. 363, 366 (1996). The statute thus allowed courts to retain control over the subject matter of the litigation

while the action was pending, F.T. Talty, P.S. Talty, & A.L. Braunstein, Methods of Practice § 8:19 (4th ed. 2000), and protected prospective buyers by enabling them to obtain "notice of pending litigation affecting title" through the registry of deeds, in the same way that they searched for record encumbrances. *Debral Realty, Inc.* v. *DiChiara, supra* at 561, 562.

Until the 1985 amendment to G. L. c. 184, § 15, a litigant could record a lis pendens in any case "affect[ing] the title to real property or [its] use and occupation" without court approval or notice to the other party. The purpose of St. 1985, c. 809, inserting the second paragraph, discussed *infra*, was to add procedural safeguards to the formerly unfettered right to record a lis pendens. As a result of the amendment, plaintiffs are now required to obtain judicial authorization before recording a memorandum of lis pendens, which "any party aggrieved" may contest. *Sutherland* v. *Aolean Dev. Corp., supra* at 38 & n.3.

b. *Disputed statutory provisions.* The scope of the statute, defined in two seemingly conflicting clauses, is facially ambiguous. The first paragraph of G. L. c. 184, § 15, states that a legal proceeding "which *affects the title* to real property or the use and occupation thereof" (emphasis added) is only effective against "the parties thereto, their heirs and devisees" and persons with actual notice of the proceeding, unless a memorandum of lis pendens is recorded. In contrast, the second paragraph, appears, at first blush, to confine the statute's scope to a much narrower class of claims in providing that a lis pendens may be recorded only if a judge makes a finding that "the subject matter of the action constitutes *a claim of a right to title* to real property or the use and occupation thereof" (emphasis added). The relevant language was retained when the statute was rewritten in 2002.

In ordering the lis pendens dissolved, the single justice of the Appeals Court disregarded the language of the first paragraph and relied solely on the more restrictive language of the second paragraph. The landowners argue that despite its limiting language, the second paragraph permits judicial endorsement of memoranda of lis pendens in all actions affecting title. We agree.

c. *Statutory construction.* A basic tenet of statutory construction requires that a statute "be construed 'so that effect is given to all its provisions, so that no part will be inoperative or superfluous.' " *Bankers Life & Cas. Co.* v. *Commissioner of Ins.*, 427 Mass. 136, 140 (1998), quoting 2A N. Singer, Sutherland Statutory Construction § 46.06 (5th ed. 1992).[4] Where, as here, a statute contains seemingly conflicting language, a court must "interpret . . . [it], if possible, so 'as to make it an effectual piece of legislation in harmony with common sense and sound reason,' " *Massachusetts Comm'n Against Discrimination* v. *Liberty Mut. Ins. Co.*, 371 Mass. 186, 190 (1976), quoting *Atlas Distrib. Co.* v. *Alcoholic Beverages Control Comm'n*, 354 Mass. 408, 414 (1968), and "tak[ing] care to . . . carry out the legislative intent." *Massachusetts Comm'n Against Discrimination* v. *Liberty Mut. Ins. Co.*, *supra*, and cases cited. The statute must be viewed "as a whole"; it is "not proper to confine interpretation to the one section to be construed." 2A N. Singer, Sutherland Statutory Construction § 46.05, at 154 (6th ed. 2000). Nor may a court "accept the literal meaning of the words of a statute without regard for that statute's purpose and history." *Sterilite Corp.* v. *Continental Cas. Co.*, 397 Mass. 837, 839 (1986), and cases cited. On the contrary, if a court concludes that "the general meaning and object of the statute should be found inconsistent with the literal import of any particular clause or section, such clause or section must, if possible, be construed according to the spirit of the act." *Saccone* v. *State Ethics Comm'n*, 395 Mass. 326, 334 (1985), quoting *Holbrook* v. *Holbrook*, 1 Pick. 248, 250 (1823).

When the Legislature added the second paragraph in 1985, it left intact the statute's broad scope set forth in the first paragraph.[5] Furthermore, rewriting the statute in 2002, the Legislature not only retained the "affect[ing] the title" language

---

[4]The current edition also adheres to this "elementary rule of construction." 2A N. Singer, Sutherland Statutory Construction § 46.06, at 181 (6th ed. 2000).

[5]The phrase "affect[ing] the title to real property" found in the first paragraph is firmly embedded in the statutory scheme. It appears in a related statute, G. L. c. 184, § 17, providing that a judgment "affecting the title to real property" is ineffective unless recorded. The same phrase defines the scope of two other lis pendens statutes: G. L. c. 94C, § 47 (*j*) (forfeiture

in the first paragraph, but added it in other paragraphs. St. 2002, c. 496, § 2. For example, the statute now contains a mechanism for expedited removal of an unjustified lis pendens, including dismissal of frivolous claims supporting an approved lis pendens. G. L. c. 184, § 15 (*c*), as appearing in St. 2002, c. 496, § 2. The language of this section is especially important, because it now allows a judge to dissolve a lis pendens if the judge "determines that the action does not affect the title to the real property or the use and occupation thereof or the buildings thereon." *Id.* If, as the developer contends, the Legislature intended to restrict the issuance of a lis pendens to claims "of a right to title," he has not explained why the Legislature mandates dissolution of a lis pendens where claims do not "affect[] the title." The language of the 2002 version of the statute is persuasive evidence that the language of § 15 (*b*) (formerly second par.) should be read consistently with the other statutory provisions: § 15 (*a*) (formerly first par.) provides that, without a recorded lis pendens, cases "affect[ing]" title are binding only on "the parties" to the proceeding; § 15 (*c*) requires the dissolution of a recorded lis pendens where the case does not "affect" title; and § 15 (*f*) provides that a zoning or other regulatory action is not a proceeding that "affects title."[6]

The relevant statutory history and the over-all statutory scheme strongly suggest that the intent of the 1985 amendment was to give "any party aggrieved" some procedural protection, and not to limit the statute's remedial reach. Absent a "clear expression of [the legislative] intent" in 1985 to radically change the scope of the statute, which broadly applied to all suits "affect[ing] the title to real property," the court may not presume that the Legislature intended to limit the lis pendens protection only to cases involving claims of "a right to title." *Kerins* v. *Lima*, 425 Mass. 108, 110 (1997), quoting *Commercial*

proceedings "affecting the title to real property or the use and occupation thereof"), and G. L. c. 185, § 86 (proceedings "affecting the title to [registered] land or the use and occupation thereof").

[6]General Laws c. 184, § 15 (*f*), as appearing in St. 2002, c. 496, § 2, specifies that a proceeding "arising under a statute, ordinance or by-law regulating land use, including . . . zoning or wetlands regulation, is not a proceeding that *affects title* to real property or the use and occupation thereof or the buildings thereon" (emphasis added).

*Wharf E. Condominium Ass'n* v. *Waterfront Parking Corp.,* 407 Mass. 123, 129 (1990), *S.C.,* 412 Mass. 309 (1992).

Furthermore, the "literal import" of the phrase in the second paragraph is inconsistent with the fundamental remedial purpose of the statute: to "ensure[] that a prospective third-party transferee can, with the exercise of reasonable prudence, acquire information relevant to a decision whether to consummate the transaction." *Debral Realty, Inc.* v. *DiChiara,* 383 Mass. 559, 562 (1981). The existence of a dispute over the scope of restrictive covenants affecting the subject property can certainly be relevant information for a prospective purchaser. However, literal construction of the second paragraph would place litigation over encumbrances outside the scope of the statute and expose buyers without notice of the litigation to the common-law lis pendens rule.[7] To harmonize the two conflicting provisions of the statute with its remedial purpose, a proper construction must disregard the "literal import" of the language of the second paragraph and recognize that the statute's broad scope is still defined, as it always has been, by the first paragraph. Properly construed, the statute continues to apply to all claims "affect[ing]" title or use and occupation of property; no change was intended by contradictory language in the second paragraph.

A claim that "affect[s] title" has been defined as a claim brought on a plaintiff's own behalf to enforce "some interest in the real estate," *McCarthy* v. *Hurley,* 24 Mass. App. Ct. 533, 536 (1987), including a lien or an encumbrance. *Siegemund* v. *Building Comm'r of Boston,* 263 Mass. 212, 214-215 (1928). Here the landowners seek to enforce, on their own behalf, the restrictive covenants intended to run with the land in the

---

[7]The developer claims that prospective purchasers of his lots need no lis pendens warning because the land use restrictions in this case are already recorded in the registry of deeds. This argument misses the point. Without a lis pendens, buyers lack notice that the scope of the restrictions is in dispute in current, potentially meritorious litigation. The developer's narrow view of the statute would amount to a license to unscrupulous defendants in land cases to sell the subject property pendente lite to good faith purchasers without notice of the dispute.

This case illustrates the point. Given that the developer recorded a document purporting to release the land at issue from all restrictions, only a recorded lis pendens will give prospective buyers notice that the landowners are challenging the validity of that release.

subdivision. Because these restrictive covenants are both an "interest in the real estate," enforceable by the landowners,[8] and an "encumbrance" on the developer's title,[9] the landowners' claim "affects" the developer's title and is within the scope of G. L. c. 184, § 15. The record title of real estate should reflect the pendency of this action so as to give notice to prospective purchasers of the contested lots that the proposed use of those lots is subject to active legal challenge. The Land Court thus properly approved the memorandum of lis pendens.[10]

*Conclusion.*

For the foregoing reasons, we conclude that the record title of real estate should reflect the pendency of any action to enforce a properly imposed plan of restrictive covenants, because such an action "affects the title to real property or the use and occupation thereof." Accordingly, we affirm the issuance of the memorandum of lis pendens by the Land Court.

*So ordered.*

---

[8]See *Riverbank Improvement Co.* v. *Chadwick*, 228 Mass. 242, 246-247 (1917) (construction restriction is "a property right in the person in favor of whose estate it runs or to which it is appurtenant"; restrictions are "real estate," "part and parcel of the land to which they are attached and with which they pass by conveyance"); A.L. Eno & W.V. Hovey, Real Estate Law §§ 13.9, 13.10 (3d ed. 1995).

[9]See *Siegemund* v. *Building Comm'r of Boston*, 263 Mass. 212, 214-215 (1928); *Bennett* v. *Sheinwald*, 252 Mass. 23, 28 (1925). As a matter of law, "building or use restrictions are encumbrances" preventing the conveyance of "good and clear record title." *Coons* v. *Carstensen*, 15 Mass. App. Ct. 431, 433 (1983), and cases cited.

[10]In the Appeals Court, the developer argued at length that the landowners' claim is moot. Here the argument is relegated to a footnote. We deem the issue waived. *Commonwealth* v. *Lydon*, 413 Mass. 309, 317-318 (1992) (issues "relegated to a footnote do not rise to the level of appellate argument").