NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-1098                                    Appeals Court

DAVID FERGUSON  vs.  JOYCE D. MAXIM & others.[1]

No. 18-P-1098.

Worcester.     June 5, 2019. - November 6, 2019.

Present:  Wolohojian, Milkey, & Hand, JJ.

Lis Pendens.  Practice, Civil, Motion to dismiss, Lis pendens
     notice.  Real Property, Purchase and sale agreement,
     Condition subsequent, Specific performance.  Contract,
     Offer and acceptance.  Agency.

Civil action commenced in the Superior Court Department on
November 9, 2017.

A special motion to dismiss and a motion for dissolution of
a memorandum of lis pendens were heard by Jane E. Mulqueen, J.

Thomas M. Bovenzi for the plaintiff.
Gregory W. Wheeler for the defendants.

HAND, J.  The plaintiff, David Ferguson, alleged that he

and defendant Joyce D. Maxim had a binding agreement for the

sale of property located in Leominster that at the time was

_____

[1] Dolores Doherty; Sandra Lolli; Johanna Dyer, also known as
Joanna Dyer; and Marcelyn Petricca.

owned by the defendants.  He appeals from (1) the order allowing a special motion to dismiss his complaint, and (2) the dissolution of a memorandum of lis pendens he obtained in relation to the property.  We conclude that the judge erred in dismissing the complaint, but affirm the dissolution of the memorandum of lis pendens.

Background.  Based on the parties' verified pleadings and affidavits, we recite the following factual allegations.  See G. L. c. 184, § 15 (c).  In August 2017, Maxim accepted Ferguson's offer to purchase (offer) property located in Leominster for $245,000.  The form used to memorialize the offer was entitled "contract to purchase real estate"; among other provisions, it identified the property, stated the purchase price and deposit terms, specified the time and place of closing, and set a deadline by which the parties were to execute a purchase and sale agreement (purchase and sale).[2]  Ferguson signed the form as the buyer, and Maxim, signing as seller,

---

[2] The offer dictated that the buyer and the seller "shall, on or before . . . September 5, 2017[,] execute the Standard Purchase and Sale Agreement of the MASSACHUSETTS ASSOCIATION OF REALTORS or substantial equivalent which, when executed, shall become the entire agreement between the parties and this Offer shall have no further force and effect."  Underneath the title of the document are the words "Binding Contract."

indicated acceptance of the offer.[3]  Although the parties dispute the point, according to Ferguson's affidavit, when Ferguson signed the offer, he was unaware that Maxim was only one of five owners of the property.

Ferguson and the defendants, through counsel, began to negotiate the terms of a purchase and sale.  The first draft, prepared by the defendants' attorney, was not circulated until after the purchase and sale deadline had passed, and the negotiations continued well past the date set in the offer for its execution.[4]  At different times, counsel for both Ferguson and the defendants suggested extending the purchase and sale deadline; the record does not indicate that any extensions ever were explicitly granted or denied.  On September 27, 2017, however, the defendants' attorney attempted to cease negotiations, "given the fact that we are well beyond our [purchase and sale] date."  Less than one week later, the defendants' attorney sought to "resurrect [negotiations]."  The discussions about the purchase and sale continued for another week before the defendants' attorney abruptly notified Ferguson's attorney that the defendants once again wanted to

---

[3] The first page of the offer identified the "BUYER(S)" as "David Ferguson or Assign"; the corresponding space for identification of the seller was left blank.

[4] We do not have details of the negotiations.

terminate all negotiations.  Shortly thereafter, with this suit pending, the defendants sold the property to a third party.

Ferguson filed the underlying complaint seeking specific performance of the offer and moved for approval of a memorandum of lis pendens (lis pendens).  The defendants unsuccessfully opposed the motion.  Following the endorsement of the lis pendens, the defendants filed a special motion to dismiss the complaint, pursuant to G. L. c. 184, § 15 (c), and also moved to dissolve the lis pendens.[5,6]

After a hearing, a different judge allowed the defendants' motions.  Considering the special motion to dismiss the complaint, the judge determined that the "complaint was devoid of information regarding the ongoing negotiations toward the [purchase and sale]; Ferguson's [failure] to negotiate the [purchase and sale] in a timely manner; Ferguson's knowledge that all five sellers needed to be in agreement [concerning the purchase and sale]; and the fact that negotiations were

---

[5] The defendants sold the property at issue to a third party while the lis pendens was in place and on record at the registry of deeds.  At oral argument, it was disclosed that the third party subsequently sold the property to a fourth party.  The parties have not addressed, and therefore we do not decide, whether the subsequent buyers were bona fide purchasers for value or, if so, how that might affect the viability of Ferguson's complaint as currently drafted.

[6] The defendants also sought attorney's fees and costs associated with the special motion to dismiss.  See G. L. c. 184, § 15 (c).

terminated." Concluding that the omission of these allegations "substantially undermined the factual basis for the complaint[, and in] fact, the omitted facts establish[ed] that the claims [were] devoid of reasonable factual support or arguable basis in law," the judge allowed the defendants' special motion to dismiss. In dissolving the lis pendens, the judge cited two grounds: (1) Ferguson's failure to include in his complaint a certification, required pursuant to G. L. c. 184, § 15 (b), that he had read the complaint and that "no material facts [had] been omitted" from it; and (2) Ferguson's failure to disclose in the complaint "all material facts."[7] This appeal followed.

Discussion. Ferguson argues that the special motion to dismiss should not have been allowed because his complaint was not "frivolous." G. L. c. 184, § 15 (c). Additionally, he contends that because the underlying action affected "the title to the real property or the use and occupation thereof," and because the affidavits he filed in connection with the defendants' special motion to dismiss demonstrated that he could provide the missing certification and factual allegations, the judge abused her discretion when she allowed the defendants' motion to dissolve the lis pendens without allowing him to make those amendments. See G. L. c. 184, § 15 (c).

---

[7] The facts on which the judge focused here were identical to those underpinning her dismissal of Ferguson's complaint.

Statutory procedure.  A lis pendens is a written notice that alerts prospective buyers of property to pending lawsuits that claim an interest in that property.  See Wolfe v. Gormally, 440 Mass. 699, 702 (2004).  General Laws c. 184, § 15, which codifies the process for obtaining a lis pendens, requires as a first step that a plaintiff file a verified complaint "nam[ing] as defendants all owners of record,"[8] and including, as we discuss in more detail infra, the claimant's sworn certification "that the complainant has read the complaint, that the facts stated therein are true and that no material facts have been omitted therefrom."  G. L. c. 184, § 15 (b).[9]  Having filed the required complaint, the plaintiff may move immediately and, at the plaintiff's option, on an ex parte basis, for issuance of a lis pendens.  G. L. c. 184, § 15 (b).  Presented with a statutorily compliant verified complaint in which the "subject matter of the action constitutes a claim of a right to title to

_____

[8] And any lessors occupying the property under a written lease.  G. L. c. 184, § 15 (b).

[9] Section 15 (b) provides, in relevant part:

"Any party seeking a memorandum of lis pendens under this section shall commence the underlying proceeding by means of a verified complaint or other complaint as is required under the rules of court to include a certification by the claimant made under the penalties of perjury that the complainant has read the complaint, that the facts stated therein are true and that no material facts have been omitted therefrom."

real property or the use and occupation thereof," the judge "shall" make a finding to that effect and endorse the lis pendens.[10]  G. L. c. 184, § 15 (b).  The judge's discretion in this regard is limited:  "once the judge determines that the subject matter of the action concerns an interest in real estate[,] . . . the allowance or denial of a memorandum of lis pendens hinges on the nature of the claim, not the merits thereof."  DeCroteau v. DeCroteau, 90 Mass. App. Ct. 903, 905 (2016).  Otherwise, a judge may decline to endorse a statutorily compliant motion only if the judge orders "the temporary equitable relief as will preserve the status quo pending further proceedings."  G. L. c. 184, § 15 (b).  Recognizing the potentially harsh consequences of a lis pendens,[11] the Legislature's 2002 amendments to § 15 included, in § 15 (c), an expedited mechanism for dissolving a lis pendens; the statute also permits a defendant to bring a "special motion to dismiss"

---

[10] If the motion is allowed ex parte, the judge is required to make additional findings "that either (1) the defendant is not then subject to the jurisdiction of the court in that action, or (2) there is a clear danger that the defendant, if notified in advance of the endorsement of the memorandum, will convey, encumber, damage or destroy the property or the improvements thereon."  G. L. c. 184, § 15 (b).

[11] Including, among others, the fact that if a sale occurs after a lis pendens has been recorded, the buyer takes subject to whatever judgment may issue in the pending lawsuit.  See Wolfe, 440 Mass. at 702.

any "frivolous" action or claim on which a lis pendens is based.[12,13]  St. 2002, c. 496, § 2.  See G. L. c. 184, § 15 (c); Wolfe, 440 Mass. at 705.  For the purposes of § 15 (c), a claim is "frivolous" if "(1) it is devoid of any reasonable factual support; or (2) it is devoid of any arguable basis in law; or (3) the action or claim is subject to dismissal based on a valid legal defense such as the statute of frauds."  G. L. c. 184, § 15 (c).

In ruling on a special motion to dismiss, a judge considers all of the parties' verified pleadings and affidavits.  See G. L. c. 184, § 15 (c).  Discovery is stayed on the filing of a special motion to dismiss[14] and, if the judge allows the special

---

[12] General Laws c. 184, § 15 (c), establishes an expedited method for obtaining relief from an ex parte order:  "the court shall hear the motion forthwith and in any event not later than [three] days after the date on which notice of the motion was given to the claimant."  We do not, however, read the entirety of § 15 (c), specifically the special motion to dismiss procedure contained therein, to be limited to situations in which the lis pendens was endorsed on an ex parte basis.

[13] In turn, any party aggrieved by a ruling under § 15 (c) may pursue an interlocutory appeal pursuant to G. L. c. 231, § 118, second par.  See G. L. c. 184, § 15 (d).  See also Galipault v. Wash Rock Invs., LLC, 65 Mass. App. Ct. 73, 81 (2005) (record on appeal must contain reasonable support for judge's factual findings).  Cf. DeLucia v. Kfoury, 93 Mass. App. Ct. 166, 168 (2018), quoting Mass. R. A. P. 15 (c), 365 Mass. 859 (1974) (single justice lacks authority to "determine an appeal or other proceeding").

[14] However, "the court, on motion and for good cause shown, may order that specified discovery be conducted."  G. L. c. 184, § 15 (c).

motion, § 15 (c) mandates an award of costs and reasonable attorney's fees to the moving party.[15]  In effect, the special motion to dismiss offers defendants whose property has been encumbered by a lis pendens a speedy and cost-effective method of addressing frivolous claims and removing an unfounded lis pendens.  See G. L. c. 184, § 15 (c).

Defendants' special motion to dismiss the complaint.  A special motion to dismiss pursuant to G. L. c. 184, § 15 (c), applies only to an action or claim supporting a lis pendens, but it shares some features with a special motion to dismiss pursuant to G. L. c. 231, § 59H, the "anti-SLAPP" statute:  like a special motion to dismiss pursuant to § 59H, and unlike a motion pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), a special motion to dismiss under § 15 (c) requires the motion judge to consider alleged facts beyond the plaintiff's initial pleading and, based on those allegations, to determine whether the plaintiff's claims are devoid of a factual or legal basis.  Compare G. L. c. 184, § 15 (c), and G. L. c. 231, § 59H, with Mass. R. Civ. P. 12 (b) (6).  In the context of a special motion to dismiss pursuant to § 15 (c), the burden is on the

_____

[15] "If the court allows the special motion to dismiss, it shall award the moving party costs and reasonable attorney's fees, including those incurred for the special motion, any motion to dissolve the memorandum of lis pendens, and any related discovery."  G. L. c. 184, § 15 (c).

defendant to demonstrate, by a preponderance of the evidence, that the plaintiff's claim is completely lacking in "reasonable factual support . . . or . . . any arguable basis in law."[16] G. L. c. 184, § 15 (c). See Benoit v. Frederickson, 454 Mass. 148, 156 (2009) (applying preponderance of evidence standard to special motion to dismiss under anti-SLAPP statute). As with a special motion to dismiss pursuant to § 59H, "[t]he question to be determined by a judge in deciding a special motion to dismiss [under § 15 (c)] is not which of the parties' pleadings and affidavits are entitled to be credited or accorded greater weight," but whether the party with the burden of proof (here, the defendants) has shown that the claim made by the moving party was devoid of any reasonable factual support or arguable basis in law. Benoit, supra at 154 n.7. We review the motion judge's determination for an abuse of discretion. See Reichenbach v. Haydock, 92 Mass. App. Ct. 567, 572 n.14 (2017). See also Galipault v. Wash Rock Invs., LLC, 65 Mass. App. Ct. 73, 82 (2005) (standard of review under § 15 [c] is analogous to

---

[16] In this, § 15 (c) differs from § 59H: in the anti-SLAPP context, the special movant bears the initial burden of demonstrating that the nonmovant's claims are based solely on the movant's petitioning activity. Blanchard v. Steward Carney Hosp., Inc., 477 Mass. 141, 147-148 (2017). If the special movant makes this showing, the burden of proving that the petitioning activity lacked factual or legal support shifts to the nonmovant. See id. at 148.

that of special motion to dismiss pursuant to G. L. c. 231, § 59H).

The claim tested by the special motion to dismiss in this case, given Ferguson's complaint for specific performance of the offer, is whether the defendants entered into and then breached an enforceable contract with Ferguson. See Perroncello v. Donahue, 448 Mass. 199, 204 (2007) (specific performance and damages are alternative remedies for breach of contract). A similar question whether and when a signed offer is a binding contract was the heart of the dispute in McCarthy v. Tobin, 429 Mass. 84 (1999), and we are guided by the Supreme Judicial Court's ruling in that case. In McCarthy, the plaintiff and the defendant signed an offer that, among other things, identified the property to be sold and the purchase price,[17] but that provided that the offer was "[s]ubject to a [purchase and sale] satisfactory to Buyer and Seller," to be executed by a specified date and time. Id. at 85. The parties failed to agree on a purchase and sale until after the stated deadline; although the plaintiff ultimately signed the purchase and sale, the defendant did not, and instead, sold the property to a third party. See id. at 85-86. The offer reflected the parties' present

---

[17] The offer also included "deposit requirements, limited title requirements, and the time and place for closing," as well as a deadline for execution of a purchase and sale. McCarthy, 429 Mass. at 85.

intention to be bound, and so was a "firm offer, the acceptance of which bound [the defendant] to sell and [the plaintiff] to buy the subject property." Id. at 88. The parties having agreed on all material terms before executing the offer, "it [could have been] inferred that the purpose of a final document which the parties agree to execute [i.e., the purchase and sale, was] to serve as a polished memorandum of an already binding contract [i.e., the offer]" (citation omitted). Id. at 87. Distinguishing McCarthy from this case, however, is the fact that the offer in McCarthy expressly conditioned its own enforceability on the subsequent and timely execution of a purchase and sale; accordingly, in that case, the failure to execute the purchase and sale "extinguish[ed]" the parties' obligations under the offer. Id. at 88. Because the court ultimately concluded that the defendant waived the condition subsequent, i.e., the deadline to execute a purchase and sale, the plaintiff was entitled to specific performance of the offer. See id. at 88-89.

The allegations in Ferguson's verified pleadings and affidavits in this case support a finding that in executing the offer, Maxim and Ferguson intended to enter into a binding contract in which all material terms of the property sale were established; the defendants' allegations do not fatally undermine them. Here, as in McCarthy, the offer attached to the

complaint identified a buyer and a seller; specified a purchase price; established a date, time, and place for closing; and appeared to be fully executed. See McCarthy, 429 Mass. at 85. Unlike McCarthy, while the offer here called for the later execution of a purchase and sale, the offer's enforceability does not appear to have been conditioned on that future agreement. Cf. id. at 85 (offer provided that parties' obligations to each other were "[s]ubject to" execution of satisfactory purchase and sale that "shall" be signed by specific date). Finally, even were there a condition subsequent, the defendants very well may have waived that condition by continuing to negotiate the purchase and sale past the deadline listed in the offer to execute that document. See id. at 88-89.

Furthermore, the evidence provided reasonable factual support and arguable legal basis for Ferguson's argument that Maxim accepted the offer with the apparent authority to act for all the sellers. See Theos & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736, 742 (2000) ("An agency relationship is created when there is mutual consent, express or implied, that the agent is to act on behalf and for the benefit of the principal, and subject to the principal's control"); Hudson v. Massachusetts Prop. Ins. Underwriting Ass'n, 386 Mass. 450, 457 (1982) (apparent authority exists where principal acts in way that

reasonably causes third person to believe that agent has authority to act for principal). Specifically, Ferguson's verified complaint and the relevant affidavits aver that, (1) before the offer was executed, the five owners hired two brokers to market and to sell the property; (2) Ferguson's broker made an offer to the owners' brokers, which was apparently accepted by the only owner identified to Ferguson by the brokers; (3) thereafter, all five owners became aware of Ferguson's offer; and (4) the other four owners nonetheless permitted Maxim to be the only seller identified in the purchase and sale. See Licata v. GGNSC Malden Dexter LLC, 466 Mass. 793, 801 (2014) (apparent authority must be based on words and conduct of principal). These allegations provided factual and legal support for Ferguson's argument that the defendants retained brokers and authorized them to speak on their behalf, and that those brokers indicated Maxim was the person authorized to accept the offer. That evidence could support a finding that Ferguson remained unaware of any sellers other than Maxim and, if other sellers existed, that he could reasonably have believed that Maxim was authorized to act for all of them.[18] See id. (agent's

---

[18] Although these facts were disputed, "[t]he mere submission of opposing affidavits . . . could not, in these circumstances, have established that the [claim] was 'devoid of any reasonable factual support or any arguable basis in law'" (citation omitted). Benoit, 454 Mass. at 154 n.7.

representations, with principal's authority to make such representations, can establish apparent authority).

Viewing the offer as the parties' completed agreement for the sale of the Leominster property, the purchase and sale would have been merely "a polished memorandum of an already binding contract" (citation omitted). McCarthy, 429 Mass. at 87. The status of the later negotiations would not be essential to the issue under consideration -- the enforceability of the offer -- and so were not material at this stage.[19]  To the extent that the judge decided otherwise, her determination was based on either the use of an incorrect legal standard, or the erroneous (at this stage of the proceedings) drawing of legal conclusions that (1) the offer was not binding, and (2) Maxim did not have the authority to sign the offer on behalf of the other owners.  See Licata, 466 Mass. at 801-802 (apparent authority requires factual determination of written or spoken words or conduct of principal, and legal determination whether third party reasonably understood agent to be acting on principal's behalf); Kurker v. Shoestring Props. Ltd. Partnership, 68 Mass. App. Ct. 644, 654-656 (2007) (enforceability of offer depends on legal

---

[19] "A material fact is one that is significant or essential to the issue or matter at hand," or, put another way, is a fact "essential to [an] element in [the] plaintiff's case" (quotations and citations omitted).  McMann v. McGowan, 71 Mass. App. Ct. 513, 520 (2008).

analysis of intent of parties, language in contract, and whether all material terms agreed upon and all conditions precedent satisfied).

Even if the facts on which the judge focused had been material, however, Ferguson's failure to include them in the verified complaint did not deprive his claims of factual or legal support,[20] distinguishing the instant case from those like McMann v. McGowan, 71 Mass. App. Ct. 513, 520 (2008), and Galipault, 65 Mass. App. Ct. at 82-83. In McMann, supra, the parties' contract defined the only permissible method by which

---

[20] Indeed, the facts on which the judge focused do not directly contradict Ferguson's allegations. As to Ferguson's awareness of sellers other than Maxim, the listing broker averred that he informed the "selling broker" that the other four owners would have to sign the purchase and sale. That statement is not inconsistent with Ferguson's statement that he did not know about the other sellers before the offer was executed, and does not otherwise undermine either Ferguson's claim to have believed that Maxim had the "full power and authority to perform SELLER'S obligations under the [offer]" or his argument that the offer was the legally significant agreement. These are factual questions to be resolved in the trial court.

We acknowledge that there will be instances, not present here, where the omitted facts will directly contradict the allegations contained in a plaintiff's complaint, and the judge will have to resolve that conflict in some manner. Although we need not reach that issue here, we observe that the best practice in such a situation, in the limited circumstances of a special motion to dismiss, may be to hold a hearing and, if necessary, allow limited discovery on the facts in dispute. See G. L. c. 184, § 15 (c) ("the court, on motion and for good cause shown, may order that specified discovery be conducted"). See also Benoit, 454 Mass. at 155-157 (Cordy, J., concurring).

the parties could deliver notices under their purchase and sale; the omitted fact, which was undisputed, was the plaintiff's failure to provide notice in the way that complied with the terms of the contract.  As the plaintiff's case turned on that missing fact, the judge was correct in allowing the special motion to dismiss the plaintiff's complaint.  Id.  The plaintiffs in Galipault, supra at 74-76, claimed that they were entitled to rescission of a real estate transaction based on a right of first refusal contained in the master deed of the condominium at issue.  Their verified complaint omitted undisputed facts about their knowledge of the sale of units subject to that right of first refusal and of the plaintiffs' waiver of that right, and therefore dismissal of the plaintiffs' claim was likewise proper because the claim could not survive in the face of those omitted facts.  See id. at 83.  Here, by contrast, adding the omitted facts into the equation does not foreclose the possibility that Ferguson's legal theory is correct, i.e., that the offer was an enforceable contract to which Maxim had the authority to bind the other sellers.

Finally, although the judge's dismissal of Ferguson's complaint was not based on the Statute of Frauds, the defendants raised the Statute of Frauds below as a bar to enforcement of the offer against the four defendants who did not sign the offer, and renew that argument on appeal.  We conclude that

although the Statute of Frauds may be a viable defense, its ultimate success depends on the resolution of disputed facts, e.g., whether the other four defendants indicated Maxim had the authority to sign on their behalf, see Hudson, 386 Mass. at 457, or whether Maxim's purchase and sale with Ferguson was ratified by the property's other owners, see Licata, 466 Mass. at 802, rulings that, as we note above, should not be made in deciding a special motion to dismiss. See Citadel Realty, LLC v. Endeavor Capital N., LLC, 93 Mass. App. Ct. 39, 46 n.15 (2018) (potential defense does not remove factual or legal basis for claim). It was error to allow the defendants' special motion to dismiss the complaint in this action.

Dissolution of the lis pendens. Although we conclude that the judge erred in allowing the special motion to dismiss, it does not necessarily follow that she erred in dissolving the lis pendens.

As we discuss above, to obtain a lis pendens, a plaintiff must first file a verified complaint "includ[ing] a certification by the claimant made under the penalties of perjury that the complainant has read the complaint, that the facts stated therein are true and that no material facts have been omitted therefrom." G. L. c. 184, § 15 (b). The certification requirement in § 15 (b) "is not one of mere form." DeCroteau, 90 Mass. App. Ct. at 906. Given the significant

consequences of a lis pendens, "strict compliance with the statutory prerequisites is required."  Id.

Having filed a verified complaint, a plaintiff may then move for an endorsement of the lis pendens from a "justice of the court in which the action is pending."  G. L. c. 184, § 15 (b).  Once a lis pendens has been allowed, the statute provides for its dissolution "[i]f the court determines that the action does not affect the title to the real property."  G. L. c. 184, § 15 (c).

In this case, the judge dissolved the lis pendens not only because she ruled that the complaint failed as a matter of law, requiring dismissal, but also because Ferguson failed to include the required certification.  Reviewing for either error of law or other abuse of discretion, McMann, 71 Mass. App. Ct. at 519, we discern neither in the judge's dissolution of the lis pendens based on Ferguson's failure to include the required certification.  See DeCroteau, 90 Mass. App. Ct. at 906 (affirming order denying motion for approval of lis pendens where plaintiff's complaint failed to include certification). As Ferguson concedes, his verified complaint did not include the certification required by § 15 (b).  Ferguson's argument that he

could have cured this omission by amending his complaint to include the necessary certification does not alter our view.[21]

There was no error in the judge's dissolution of the lis pendens on this basis.

---

[21] As an initial matter, Ferguson never moved to amend his complaint; the issue was raised at the end of his memorandum in support of his motion for reconsideration of the order allowing the defendants' special motion to dismiss. By the time Ferguson raised the issue, however, the complaint had been dismissed and the dismissal had been entered. Once the complaint was dismissed, Ferguson's ability to amend his complaint as a matter of right terminated. See Mass. R. Civ. P. 15 (a), 365 Mass. 761 (1974). Cf. National Equity Props., Inc. v. Hanover Ins. Co., 74 Mass. App. Ct. 917, 918 (2009). Absent the consent of the defendants to the proposed amendment, Ferguson would have been required to seek court permission to add the missing certification by filing a motion to amend. Mass. R. Civ. P. 15 (b), 365 Mass. 761 (1974). Acknowledging that leave to amend "shall be freely given when justice so requires," Lipsitt v. Plaud, 466 Mass. 240, 254 (2013), quoting Mass. R. Civ. P. 15 (a), the burden is on the proponent of the amendment to seek that leave, a step that Ferguson did not take. See Mass. R. Civ. P. 7 (b), 365 Mass. 748 (1974) ("An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought").

As importantly, even had Ferguson made the required motion to amend, given the clear statutory requirement that the certification be included in the verified complaint, and the lack of any explanation for the omission, the judge would not have been obligated to allow the amendment. See Powell v. Stevens, 69 Mass. App. Ct. 87, 91-92 (2007) (determination whether to grant leave to amend claims after judgment entered lies within judge's broad discretion).

Conclusion.  So much of the judgment as allowed the special motion to dismiss is vacated.  The remainder of the judgment is affirmed.[22]

So ordered.

---

[22] Because we vacate so much of the judgment as allowed the special motion to dismiss, the award of attorney's fees to the defendants pursuant to G. L. c. 184, § 15 (c), is also vacated.