NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

23-P-210                                          Appeals Court

            IN THE MATTER OF THE ESTATE OF JEAN OLSON.


                         No. 23-P-210.

      Plymouth.     November 1, 2023. - March 21, 2024.

           Present:  Wolohojian, Neyman, & Shin, JJ.


Uniform Probate Code.  Conservator.  Will, Execution, Validity,
     Extrinsic evidence.  Error, Harmless.  Statute,
     Construction.  Practice, Civil, Attorney's fees.



     Petition filed in the Plymouth Division of the Probate and
Family Court Department on July 9, 2019.

     The case was heard by Edward F. Donnelly, Jr., J., on a
motion for summary judgment.


     Brian K. Lee for David D. Parker, Jr.
     Matthew H. Beaulieu for Anthony Lewandowski.
     John A. Gianino, for Paul L. Grzesik, was present but did
not argue.


     SHIN, J.  The former conservator (conservator) of the

decedent, Jean Olson, filed a petition to probate a document

offered as Olson's will.  The document, titled "Last Will and

Testament of Jean Olson," was prepared by the conservator in

consultation with Olson several months before her death, attested to by two witnesses, and notarized. It was signed not by Olson herself, however, but by the conservator in his name, acting under the apparent, but mistaken, belief that he had the power to execute a will on Olson's behalf.

Olson's nephew, Anthony Lewandowski, objected to the conservator's petition and moved for summary judgment, arguing that the document was not a valid will under G. L. c. 190B, § 2-502 (a), which requires that wills be signed by the testator or by someone else in the testator's name.[1] The conservator responded that § 2-502 (a) contains an exception that allows the use of extrinsic evidence to prove that a testator intended an unsigned document to be her will. A Probate and Family Court judge agreed with Lewandowski and dismissed the petition.

We conclude that in the specific circumstances of this case -- where a separate statute (the conservatorship statute) allows conservators with court authorization to execute wills on behalf of other persons, and the conservator here acted on the belief that he had such authorization -- the language creating the exception to § 2-502 (a) is best construed to permit the use of extrinsic evidence to establish that the unsigned document is a

---

[1] Olson's nephew, Paul L. Grzesik, also filed an objection in the Probate and Family Court and joins in the brief filed by Lewandowski in this appeal.

valid will.  A contrary reading would risk allowing a good faith

mistake of the conservator, a person specifically appointed by

the court to manage Olson's estate, to override Olson's

testamentary intent.  As we do not believe this would be

consistent with the statutory purposes, we vacate the dismissal

of the petition and remand for further proceedings.[2]

Background.  1.  Statutory framework.  We begin with an

overview of the relevant statutes to provide context for the

issues raised by the appeal.

In 2009 the Legislature enacted G. L. c. 190B, § 2-502, as

part of the Massachusetts Uniform Probate Code (MUPC).  See

St. 2008, c. 521, § 9.  Section 2-502 states in full:

> "[Execution of Wills.]
>
> "(a) Except as provided in subsection (b) and in sections
> 2-506 and 2-513,[3] a will shall be:
>
> "(1) in writing;
>
> "(2) signed by the testator or in the testator's name by
> some other individual in the testator's conscious presence
> and by the testator's direction; and

---

[2] We note that the conservator filed the notice of appeal
before the decree was docketed.  Because the objectors do not
raise the issue and we see no prejudice, we reach the merits on
appeal.  See Liberty Mut. Fire Ins. Co. v. Casey, 91 Mass. App.
Ct. 243, 244 n.2 (2017).

[3] These sections concern, respectively, choice of law if a
will is executed or a testator at the time of death is domiciled
outside Massachusetts, and the admissibility of separate
writings to dispose of items of tangible personal property.
Neither is pertinent to this case.

"(3) signed by at least 2 individuals, each of whom witnessed either the signing of the will as described in paragraph (2) or the testator's acknowledgment of that signature or acknowledgment of the will.

"(b) Intent that the document constitute the testator's will can be established by extrinsic evidence." (Emphases added.)

As we will discuss, this case turns on the meaning of § 2-502's opening clause, "[e]xcept as provided in subsection (b)."

Section 2-502 is modeled after the corresponding section of the Uniform Probate Code (UPC)[4] but differs in certain respects, including that it omits the UPC provision authorizing holographic wills (subsection [b] of UPC § 2-502). For comparison we set out the full text of UPC § 2-502 in the margin.[5] Also, the MUPC does not contain a provision comparable

---

[4] "The Uniform Probate Code is published by the Uniform Law Commission (also known as the National Conference of Commissioners on Uniform State Laws), a State-supported, national organization that proposes uniform codes for State legislatures to encourage uniformity and clarity in important areas of State law." American Family Life Assur. Co. of Columbus v. Parker, 488 Mass. 801, 804 n.5 (2022).

[5] The full text of section 2-502 follows:

"(a) Except as otherwise provided in subsection (b) and in Sections 2-503, 2-506, and 2-513, a will must be:

"(1) in writing;

"(2) signed by the testator or in the testator's name by some other individual in the testator's conscious presence and by the testator's direction; and

to UPC § 2-503, known as the harmless error provision.  In jurisdictions where it has been adopted, § 2-503 allows a court to treat a document or writing as a valid will, even if "not executed in compliance with Section 2-502," "if the proponent of the document or writing establishes by clear and convincing evidence that the decedent intended the document or writing to constitute . . . the decedent's will."  Uniform Probate Code § 2-503 (2006).  See, e.g., Estate of Ehrlich, 427 N.J. Super. 64, 70-71 (2012).  The purpose of § 2-503 is "to retain the intent-serving benefits of Section 2-502 formality without inflicting intent-defeating outcomes in cases of harmless error."  Uniform Probate Code § 2-503 comment (2006).

Article V, Part 4, of the MUPC governs conservatorships. With respect to "a person who is disabled for reasons other than

---

"(3) signed by at least two individuals, each of whom signed within a reasonable time after he [or she] witnessed either the signing of the will as described in paragraph (2) or the testator's acknowledgment of that signature or acknowledgment of the will.

"(b) A will that does not comply with subsection (a) is valid as a holographic will, whether or not witnessed, if the signature and material portions of the document are in the testator's handwriting.

"(c) Intent that the document constitute the testator's will can be established by extrinsic evidence, including, for holographic wills, portions of the document that are not in the testator's handwriting."

Uniform Probate Code § 2-502 (2006).

minority," a court may appoint a conservator in certain situations, including where "the person is unable to manage property and business affairs effectively because of a clinically diagnosed impairment in the ability to receive and evaluate information or make or communicate decisions, even with the use of appropriate technological assistance" and "the person has property that will be wasted or dissipated unless management is provided."  G. L. c. 190B, § 5-401 (c).  After service of notice, "the court in which the petition [for appointment of a conservator] is filed has . . . exclusive jurisdiction to determine how the estate of the protected person . . . shall be managed, expended, or distributed to or for the use of the protected person, the protected person's dependents, or other claimants," until the conservatorship proceeding is terminated. G. L. c. 190B, § 5-402 (2).

The powers of a conservator are listed in G. L. c. 190B, §§ 5-423 and 5-424.  While there are many, the listed powers do not include the power to make a will.  Rather, under G. L. c. 190B, § 5-407 (d) (7), it is the court that has the power to "make, amend, or revoke the protected person's will."  But as provided by G. L. c. 190B, § 5-425, "the court may confer on a conservator at the time of appointment or later . . . any power that the court itself could exercise under section[] . . . 5-407 (d)."  In that event, when "approving a conservator's

exercise of the powers listed in [§ 5-407 (d)]," the court "shall consider primarily the decision that the protected person would have made if not disabled, to the extent that the decision can be ascertained."  G. L. c. 190B, § 5-407 (e).

2.  Facts.  In December 2015 an elder-services agency filed a petition in the Probate and Family Court requesting appointment of a conservator for Olson.  On July 17, 2017, a judge found after a hearing that a basis existed for a conservatorship and issued a decree and order appointing the conservator and giving him "all the powers and duties authorized to a conservator for a protected person under G. L. [c.] 190B[,] § 5[,] Part IV, exclusive of those powers requiring specific court authorization."[6]  On September 6, 2017, the judge issued a further order that was incorporated into the decree.  As relevant here, the order directed that "[a] financial and an estate plan be established for Jean Olson, with the assistance of the [c]onservator . . . and other expert financial/estate planners."

The summary judgment record contains two affidavits from the conservator describing the following steps he took pursuant to the September 6, 2017 order.  Unable to locate a will or

---

[6] The same day, the elder-services agency filed a petition for appointment of a guardian for Olson, alleging that she was an incapacitated person.  In February 2018 the judge appointed the conservator to also act as Olson's guardian.

other document expressing Olson's testamentary wishes, the conservator hired an attorney "to determine whether a Petition for Estate Plan and/or appointment of a Guardian ad Litem ('GAL') was required."  This attorney, "[a]fter investigation, including consultation with the Judicial Case Manager," confirmed that the decree as modified by the September 6, 2017 order "expanded [the conservator's] authority to create an estate plan and that a GAL was not required because [Olson] was represented by independent legal counsel, Doris Muirhead."  The conservator then hired a second attorney, Alyssa Asack, to draft an estate plan for Olson and met with Olson multiple times throughout 2018 to discuss how she wanted to divide her estate. At one such meeting, which was also attended by Asack and Muirhead, Olson expressed that she wanted to make major bequests to Boston Children's Hospital and the Masonic Lodge in Brockton because of services that those organizations had provided to her and her family.  Once Asack memorialized those wishes in a draft will, the conservator met with Olson for approximately 1.7 hours on October 17, 2018, to discuss the draft, including specifically the provisions that would distribute thirty-three percent shares of Olson's estate to each of Boston Children's Hospital and the Masonic Lodge in Brockton.  After discussion Olson decided to reduce those amounts to twenty-five percent

shares, while again "express[ing] great pride and enthusiasm for what each organization had done to benefit her and her family."

On October 23, 2018, the conservator executed the document at issue (2018 document). Titled "Last Will and Testament of Jean Olson," the 2018 document begins: "I, JEAN OLSON, by my court-appointed Conservator, . . . acting pursuant to the authority granted to him in the Conservatorship Decree dated September 6, 2017, . . . declare that this is my Last Will and Testament, hereby revoking all prior Wills and Codicils." Under the distribution provisions, Olson's estate would be devised as follows: twenty-five percent to Boston Children's Hospital, twenty-five percent to the Paul Revere Lodge A.F. and A.M. (the Masonic Lodge in Brockton), eleven percent to each of her four nephews, and three percent to each of her two nieces-in-law. The conservator signed the 2018 document, which was witnessed and notarized, in his own name as Olson's conservator.

Olson died, it appears unexpectedly, on May 6, 2019, terminating the conservatorship. See G. L. c. 190B, § 5-429 (d) ("A conservatorship terminates upon the death of the protected person"). Two months later, the conservator filed the underlying petition to probate the 2018 document as Olson's will. Lewandowski and another of Olson's nephews (together, objectors) filed appearances and objections. See note 1, supra. Lewandowski thereafter moved for summary judgment, arguing that

the powers granted to the conservator by the conservatorship decree did not include the power to make a will for Olson.[7] While conceding he did not have such power, the conservator countered that the 2018 document was still a valid will because the conservatorship decree preserved Olson's right to make her own will.

In light of the conservator's concession, Lewandowski then argued that the 2018 document was not a valid will under G. L. c. 190B, § 2-502 (a), because it was neither signed by Olson nor signed in her name by someone else in her conscious presence and at her direction. In response the conservator sought to rely on the "[e]xcept as provided in subsection (b)" clause of § 2-502 (a), claiming he could prove with extrinsic evidence that Olson intended the 2018 document to be her will. He submitted the two affidavits described above in support, as well as an affidavit signed by Lewandowski. Although the circumstances of its execution are unclear, Lewandowski averred in the affidavit that Olson "often spoke of the great gratitude and appreciation she felt towards Boston[] Children's Hospital" and "discussed her and her late husband's long involvement with the Masonic Lodge in Brockton." Lewandowski further averred

---

[7] Lewandowski's motion also claimed that Olson had previously executed a will in 2006. It appears that the objectors filed a copy of the 2006 will in the trial court, but it is not included in the record appendix.

that, based on his conversations with Olson, "it is [his] opinion that the Will as presented for allowance represents her wishes."

After a hearing a judge (who was not the judge in the conservatorship proceeding) issued a thoughtful written decision granting summary judgment for the objectors.  The judge concluded that the "[e]xcept as provided in subsection (b)" clause did not allow extrinsic evidence to be used to override the signature requirement of § 2-502 (a), and so the 2018 document could not be submitted to probate.  A decree entered accordingly, dismissing the petition.

Discussion.  We review a judge's decision granting summary judgment de novo.  See American Family Life Assur. Co. of Columbus v. Parker, 488 Mass. 801, 804 (2022).  Summary judgment is appropriate if no material fact is in dispute and the moving party is entitled to judgment as a matter of law.  See id.

Here, whether the objectors are entitled to summary judgment hinges on a question of law -- the scope of the "[e]xcept as provided in subsection (b)" clause of G. L. c. 190B, § 2-502 (a).  The conservator construes this language to create a blanket exception to the execution requirements of subsection (a), allowing any document to be submitted to probate if the proponent can prove with extrinsic evidence that the document is the testator's intended will.  Any other

interpretation, the conservator says, would render the "[e]xcept" clause a nullity. Conversely, the objectors contend that the conservator's interpretation would render subsection (a) a nullity. While conceding that the "[e]xcept" clause must be given meaning, the objectors urge us to limit it to "circumstances where the four corners of a properly executed will are insufficient" to establish testamentary intent (such as where a document is mislabeled or unlabeled), or where "there is some statutory basis for looking beyond the four corners of the document."

Our goal in interpreting any statute is to effectuate the intent of the Legislature. See Wolfe v. Gormally, 440 Mass. 699, 704 (2004). "Ordinarily, if the language of a statute is plain and unambiguous it is conclusive as to legislative intent." Sterilite Corp. v. Continental Cas. Co., 397 Mass. 837, 839 (1986). Because the Legislature is presumed to act reasonably, however, "[w]e will not adopt a literal construction of a statute" if it would lead to illogical results. Attorney Gen. v. School Comm. of Essex, 387 Mass. 326, 336 (1982).

We do not agree with the conservator that the "[e]xcept as provided in subsection (b)" language is unambiguous and must be construed to permit, without limitation, the use of extrinsic evidence to prove that an unsigned or unwitnessed document is a will. Under the conservator's reading, any writing imaginable,

such as scribbles on a cocktail napkin, could theoretically be probated as a will.  This would essentially nullify the requirements of § 2-502 (a) that wills "shall be" witnessed and signed.  We decline to adopt such a reading as it would violate the basic tenet of statutory construction that "no word in a statute should be considered superfluous."  International Org. of Masters, Mates & Pilots, Atl. & Gulf Maritime Region, AFL-CIO v. Woods Hole, Martha's Vineyard & Nantucket S.S. Auth., 392 Mass. 811, 813 (1984).  See Champigny v. Commonwealth, 422 Mass. 249, 251 (1996) (court will not interpret statute in manner that would result in "legislative effort" having "no practical effect").

The conservator's reading is also contrary to at least two of the five enumerated purposes of the MUPC:  "to simplify and clarify the law concerning the affairs of decedents," and "to promote a speedy and efficient system for liquidating the estate of the decedent and making distribution to the decedent's successors."  G. L. c. 190B, § 1-102 (b).  Construing the "[e]xcept as provided in subsection (b)" clause to supplant entirely the signature and attestation requirements of § 2-502 (a) would lead to increased litigation and delays in settling estates and create the risk of fraud and undue influence over the vulnerable and elderly.  We do not believe that this would be consistent with legislative intent.  See

Wolfe, 440 Mass. at 704, quoting Saccone v. State Ethics Comm'n, 395 Mass. 326, 334 (1985) ("if a court concludes that 'the general meaning and object of the statute should be found inconsistent with the literal import of any particular clause or section, such clause or section must, if possible, be construed according to the spirit of the act'").  The Legislature's decision not to adopt either the UPC provision authorizing holographic wills or the UPC harmless error provision supports our conclusion, as these omissions suggest that the Legislature intended for the execution requirements of § 2-502 (a) to apply more strictly in Massachusetts.

That said, under the tenet that no word in a statute is to be considered superfluous, we must presume that the Legislature intended for the "[e]xcept as provided in subsection (b)" clause to have some meaning.  Granted, it may be that the clause is a product of legislative oversight, as indicated by comparing § 2-502 with the corresponding provision of the UPC.  While similar language appears in UPC § 2-502 (a), subsection (b) in the UPC is the provision authorizing holographic wills.  The "[e]xcept" clause makes sense in this statutory structure -- a will must be signed and witnessed, except that under subsection (b) a will that is not witnessed is still valid as a holographic will if the signature and material portions are in the testator's handwriting.  The provision concerning extrinsic

evidence, which is subsection (c) of UPC § 2-502, likewise makes sense, as it is not structured as an exception to the execution requirements of subsection (a). Rather, as explained in the comment, it permits the use of extrinsic evidence to prove "testamentary intent." Uniform Probate Code § 2-502 comment (2006). See Restatement (Third) of Property: Wills and Other Donative Transfers § 3.1 comment g (1999) ("To be a will, the document must be executed by the decedent with testamentary intent, i.e., the decedent must intend the document to be a will or to become operative at the decedent's death. . . . In the absence of a clear expression of testamentary intent in the document, testamentary intent can be inferred from the document or established by extrinsic evidence").

As the objectors suggest, it is possible that the Legislature, after deciding not to adopt the UPC provision authorizing holographic wills, neglected to remove the "[e]xcept as provided in subsection (b)" language from subsection (a). But if that is the case, it is for the Legislature to amend the statute. Our role, where "a statute contains seemingly conflicting language," is to "interpret . . . [it], if possible, so as to make it an effectual piece of legislation in harmony with common sense and sound reason" (quotations and citation omitted). Wolfe, 440 Mass. at 704. We must also consider the

language in light of the "statute's purpose and history" (citation omitted).  Id.

With these considerations in mind, we conclude that, in the particular circumstances of this case and in view of the interplay between § 2-502 and the conservatorship statute, it is appropriate to turn to extrinsic evidence to determine whether Olson intended the 2018 document to be her will.  The objectors concede that a document that deviates from the requirements of § 2-502 (a) may still be a valid will if a different statute authorizes it.  One such statute is G. L. c. 190B, § 5-407 (d) (7), which, as mentioned, allows a conservator with court authorization to make a will on behalf of a person under conservatorship.  The court would then engage in a substituted judgment inquiry to determine whether the will comports with "the decision that the protected person would have made if not disabled, to the extent that the decision can be ascertained." G. L. c. 190B, § 5-407 (e).

Although the decree here did not authorize the conservator to make a will, were Olson still living, the court could have later conferred that power on the conservator and approved the 2018 document as Olson's will after a substituted judgment hearing.  See G. L. c. 190B, § 5-425 (court may confer § 5-407 [d] powers on conservator "at the time of appointment or later").  The objectors conceded as much at oral argument.  In

this situation, where a substituted judgment hearing cannot be held because Olson's death terminated the conservatorship, we think it aligns with the purposes of the MUPC and "common sense and sound reason" for the court to consider extrinsic evidence to determine whether the 2018 document comports with Olson's testamentary intent.  Wolfe, 440 Mass. at 704, quoting Massachusetts Comm'n Against Discrimination v. Liberty Mut. Ins. Co., 371 Mass. 186, 190 (1976).  See G. L. c. 190B, § 1-102 (a) ("This chapter shall be liberally construed and applied to promote its underlying purposes and policies").  It is undisputed that the conservator has no direct financial interest in the probate of the 2018 document and that he acted on a good faith, albeit erroneous, belief that he had the authority to execute a will for Olson.  Allowing a conservator's good faith mistake to potentially defeat a decedent's testamentary wishes would contravene the MUPC's purpose "to discover and make effective the intent of a decedent in distribution of the decedent's property" without materially serving the other enumerated purposes.  G. L. c. 190B, § 1-102 (b) (2).  See Zimmerling v. Affinity Fin. Corp., 86 Mass. App. Ct. 136, 142-143 (2014) (declining to construe provision of Uniform Commercial Code in manner that would be contrary to one of enumerated purposes).

Accordingly, we conclude that the 2018 document may be submitted to probate if the conservator is able to prove with extrinsic evidence that Olson intended it to be her will.  We express no view on the underlying factual question of Olson's intent.  We agree with the objectors that that question is not properly before us as the conservator did not cross-move for summary judgment on the ground that no issue of material fact is in dispute.

The conservator has requested recovery of his appellate attorney's fees to be paid from the estate.  We allow the request under the authority of G. L. c. 190B, § 3-720, and G. L. c. 215, § 45.[8]  Within fourteen days of the date of this opinion, the conservator may file an application for fees, and the objectors may have fourteen days to respond.  See Fabre v. Walton, 441 Mass. 9, 10-11 (2004).

Conclusion.  The decree is vacated, and the matter is remanded for further proceedings consistent with this opinion.

So ordered.

---

[8] The objectors' request for appellate attorney's fees is denied.